## Case No. 13,692.

### SWICK v. HOME INS. CO.

[2 Dill. 160;[1] 2 Ins. Law J. 415; 4 Bigelow. Ins Cas. 176.]

Circuit Court, E. D. Missouri.　March 25, 1873.

INSURANCE—LIFE POLICY—ASSIGNEE'S RIGHT TO RECOVER—WAGER POLICIES—WARRANTY AS TO HEALTH, AND USE OF INTOXICATING LIQUORS—EFFECT OF FAILING TO MAKE FULL ANSWERS—ONUS PROBANDI.

1. When a life policy of insurance is assigned by the assured, with the consent of the company, to a creditor of the assignor, to secure a past debt and future advances, the assignee has all the rights which the executor of the assured would have had if the policy had not been assigned, and can recover, if entitled to recover at all, the full amount thereof, irrespective of the amount of his debt against the assured.

2. A life policy taken for the benefit of and assigned to a person who has no insurable interest in the risk is void. See Holabird v. Atlantic Trust Life Ins. Co. [Case No. 6,587], note.

[Cited in Langdon v. Union Mut. Life Ins. Co., 14 Fed. 274.]

[Cited in Singleton v. St. Louis Mut. Life Ins. Co., 66 Mo. 72.]

3. Warranty in relation to "good health," and being "free from any symptoms of disease," construed.

4. Warranty that the assured "had never been addicted to the excessive or intemperate use of alcoholic stimulants," and that he "did not habitually use intoxicating liquors as a beverage," construed.

[Cited in Northwestern Mut. Life Ins. Co. v. Hazelett (Ind. Sup.) 4 N. E. 587.]

5. Distinction pointed out between untruthful answers to specific questions and the mere failure to make full answers, and the effect of such failure under the provisions of the policy in suit.

[Cited in Whitmore v. Supreme Lodge Knights & Ladies of Honor, 100 Mo. 47, 13 S. W. 497; Wilkins v. Germania Fire Ins. Co., 57 Iowa, 531, 10 N. W. 917.]

[See Wilkinson v. Union Mut. Ins. Co., Case No. 17,676.]

6. By the pleadings, the company set up affirmatively as a defence a breach of specific warranties as to existing facts, and this was denied by the plaintiff: Held, that the burden of proof to establish this defence was upon the company. See Holabird v. Atlantic Mut. Life Ins. Co., note [supra].

The defendant issued a policy dated February 11, 1870, to William Henry for $2,000, insuring his life. With the consent of the company, the assured, Wm. Henry, by instrument dated March 19, 1870, assigned this policy to the plaintiff [Elias Swick]. Henry died in June following. The plaintiff sues to recover from the company the amount of the policy. The defendant denies that the plaintiff is entitled to recover, and makes several specific defences to the action, which are noticed in the charge of the court to the jury given below.

John W. Noble and Strongs & Hedenberg, for plaintiff.

D. T. Potter and Lee & Adams, for defendant.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. 1. The first defence relates to the assignment of the policy and the plaintiff's rights under such assignment. The plaintiff claims that prior to and at the time of the application for the policy, he was a creditor of Henry, and remained such creditor until his death, and that the policy was assigned to him as security for the debt, and for any sums he might afterwards advance to Henry. If upon the evidence you find this to be the case, then the plaintiff can recover on such policy if Henry's executor could have recovered thereon if the policy had not been assigned. And in such case the plaintiff can recover, if entitled to recover at all, the full amount of the policy, although the debt of Henry to him may be much less than the amount insured. On this subject we may observe that no life policy is valid if taken for the benefit of a person who has no insurable interest in the risk. Hence if this policy on the life of Henry had been taken directly for the benefit of Swick, and Swick at the time was not a creditor of Henry, and there was no agreement or understanding that it was for the purpose of securing him for advances to be made to Henry, and if the plaintiff had in no way an insurable interest in Henry's life, then the policy would have been void. The law forbids such mere wager policies, and also forbids any scheme or contrivance whereby its requirements in that respect are sought to be evaded.

Hence if Swick and Henry confederated together to procure this policy for the benefit of Swick, who was not or had not agreed to become a creditor of Henry, and with the view of having the same assigned thereafter to Swick, without consideration, or not as a security for a debt due or to become due, or for any other lawful purpose, then such contrivance would make the policy void. If, on the other hand, Swick was a creditor of Henry, and if the purpose in procuring the policy was to have the same assigned thereafter to Swick for his (Swick's) indemnity, and Swick paid the premium, and the facts were known to the agent of the company, the policy is not void. So if there was, as plaintiff contends, an understanding between Henry and Swick, the latter being a creditor of Henry, or having agreed to become such, that this policy should be taken on Henry's life, with the view of having Henry or Henry's estate in the event of his death in a condition to meet his debt to Swick, and if Swick paid the premium with the knowledge of the company's agent, and thereafter the policy was assigned to Swick when such creditor of Henry, or as a security for debts due or agreed to be created, and the company agreed in writing to such assignment, then the policy and assignment were not invalid. In other words, the

law exacts fair dealing in these respects from all parties in interest. It will not uphold a policy made, or fraudulently contrived to be made for the benefit of a person who has no insurable interest in the risk. Mere speculative risks in the lives of others, or gambling policies of any kind, are forbidden for the good of society. It is not necessary for the purposes of this case to discuss what may, under different circumstances, be a mere speculative risk, or what interest will be non-speculative; for in the case before the jury the question is merely on the one hypothesis, whether Swick was a creditor of Henry at the date of the policy, and continued so to be at the date of assignment; and on the other hypothesis presented—that if he had no understanding at the date of the policy concerning its subsequent assignment—whether Swick was Henry's creditor when it was assigned, and remained such until Henry's death.

2. The main defence upon the trial has been rested upon alleged misrepresentations by the assured in the application, respecting his health, and his habits as to the use of alcoholic drinks.

In the application the following questions were asked of Henry and answered by him: (6) "Is your health good, and, as far as you know, free from any symptoms of disease?" Answer—"Yes." (9) "Are your habits uniformly and strictly sober and temperate?" Answer—"Yes." (10a) "Have you ever been addicted to the excessive or intemperate use of any alcoholic stimulants or opium?" Answer—"No." (10b) "Do you use habitually intoxicating drinks as a beverage?" Answer—"No."

By the terms of the contract between these parties, these answers are warranted to be true, and it is agreed in the policy that if the answers are untrue or deceptive in any respect, the policy shall be void and of no effect. The parties have the right thus to agree, and are bound by their agreement, and hence the importance of understanding what the questions asked were, and the answers given thereto. This is the more important, because if the answers given are untrue, the policy is avoided, although there are no intentional or fraudulent misstatements, and although the party's habits as to intoxicating drinks did not in fact cause or even accelerate his death. We remark to you first, that the questions as to health and habits in respect to intoxicating drinks will be taken to mean what the words employed by those questions usually and commonly mean. They are not words of art, but words of every-day meaning, and this is a contract not between professional men or lawyers, but a contract that these companies profess to make with the world, and when they ask a man if his health is good, there is no mystery in the question.

If you find from the evidence that at the date of the application Henry's health was not good, or if Henry knew of any symptom of disease which he did not disclose, then there can be no recovery on the policy. If you find the fact to be as the company contends it was, that Henry's general health was at the time impaired by exposure, or from the use of intoxicating liquors, or from any other cause, there can be no recovery on the policy. But if it was known to the company, or its agent taking the risk, that the assured had, as certified by the family physician to the company, been sick a few days before, and if this was a mere temporary illness, which was over at the time, and was disregarded by the company, or its agent taking the risk, as not being within the purview of the question asked of the assured in this respect, the policy would not be thereby avoided.

3. Now as to the questions respecting intoxicating liquors. These relate to the habits of the party. The applicant stated that he had never been addicted to the excessive or intemperate use of alcoholic stimulants. This is not a statement that he had never been addicted to the use of intoxicating liquors at all, but a statement that he had never been addicted to the excessive or intemperate use of them, and it is untrue if Henry had, and only in case he had, been addicted to the excessive or intemperate use of alcoholic stimulants.

The application, in answer to other questions, stated that his habits were uniformly and strictly sober and temperate, and that he did not habitually use intoxicating drinks as a beverage. These questions and answers you will perceive relate to the habits of the party in that respect. If the company did not intend to insure any person who used intoxicating liquors at all, it would be very easy to ask such a question. But they have not done so. The occasional use of intoxicating liquors by the applicant would not make these answers untrue; nor would they be rendered untrue by any use of intoxicating drinks which did not make his habits those of a man not uniformly and strictly sober and temperate, or which did not amount to a habitual use of such drinks as a beverage.

It is your province to decide from the evidence whether the assured was or was not, at the time the application was made, a man whose habits were uniformly and strictly sober and temperate, or whether he did or did not habitually use intoxicating stimulants as a beverage; and if you find his answer to either question to be untrue, there can be no recovery on this policy, although, as above remarked, he did not intentionally make false answers, and although those habits did not in fact cause, hasten, or contribute to the death.

4. We have been asked by the defendant to instruct you that if the answers as to the

·health and habits are not full, correct, and :true, the plaintiff cannot ·recover, even though the failure to make full answers was unintentional. The application referred to and made part of the policy, contains the provision: "The undersigned does hereby covenant * * * that the preceding answers and this declaration shall be the basis of the policy; that the same are warranted to be full, correct, and true, .and that no circumstance is concealed, withheld, or unmentioned, in relation to the past or present state of health, habits of life, or condition of the said party whose life is to be assured, which may render an insurance on his life more than usually hazardous, or which may affect unfavorably his prospects of life," and that if the foregoing answers and statements be not in all respects full, true, and correct, the policy shall be void. The policy repeats or adopts this provision. Now a distinction is to be taken, we think, between untruthful answers to specific questions and the mere failure to make full answers. Such failure, under these provisions, to defeat the policy must relate to some circumstance which might render an insurance on his life unusually hazardous, or which might affect unfavorably his prospects of life; while an untruthful or incorrect answer to the specific questions asked, renders the policy absolutely void, though made in relation to a matter not material to the risk.

5. The statements and declarations in the application are warranties, and the defence here is that there has been a breach of some of these warranties. Where a party relies on the breach of such a warranty, he must establish it by evidence. This may not be the rule as to promissory warranties— that is, where the party warrants that he will not thereafter do or will refrain from ·doing something stipulated in a policy as to the future.

In this case the alleged breach of warranty is as to the statement of existing facts— the facts as to his health, and the facts as to his habits; and the defendant avers the breach, and therefore it is for the defendant to show that there has been such a breach, and not for the plaintiff to prove that there was no breach.

These observations cover, it seems to us, all that it is necessary to state relating to the law of the case. The facts the law commits to your decision, to be decided upon the evidence, and upon the evidence alone. and it expects that your verdict will be one not influenced by any considerations arising from the nature of the parties—that ·it will be one which is the expression of your unbiased judgment upon the testimony before you.

There was a verdict for the plaintiff. Judgment accordingly.

NOTE. As to the burden of proof, see Terry v. Life Ins. Co. [Case No. 13,839], affirmed in

supreme court, December term, 1872 [15 Wall. (82 U. S.) 580]. Compare, however, Price v. Phœnix Mut. Life Ins. Co. [17 Minn. 497 (Gil. 473)].

[Holabird v. Atlantic Mut. Life Ins. Co., which is given as a note to 4 Dill. 160, is published as Case No. 6,587.]