MANHATTAN LIFE INS. CO. v. HENNESSY.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

No. 821.

1. LIFE INSURANCE—ASSIGNMENT OF POLICY—INSURABLE INTEREST.

It is sufficient, to entitle an assignee of a life insurance policy to recover thereon, that he had an insurable interest in the life of the insured at the time the assignment was made, although it may have ceased prior to the latter's death.

**2.** ASSIGNMENTS FOR BENEFIT OF CREDITORS—CONDITION FOR RELEASE IN FULL—EFFECT OF ACCEPTING DIVIDEND.

In the absence of statutory provision, the participation by a creditor in the benefits of a general assignment by his debtor, conditioned that those accepting its benefits shall release their claims in full, does not operate as a discharge of the unpaid part of the debt, there being no consideration therefor.

**3.** LIFE INSURANCE—ASSIGNMENT OF POLICY—INSURABLE INTEREST.

A creditor, to whom his debtor has assigned policies of insurance on his life as collateral, does not cease to have an insurable interest in such life by reason of his accepting the benefits of a general assignment made by the debtor conditioned that all creditors participating shall accept the dividends paid in full satisfaction of their debts, where his claim is not in fact paid in full, as, even if the transaction operates as a legal discharge of the debt, the moral and equitable obligation to pay the remainder still rests upon the debtor, and is sufficient to give the creditor an insurable interest in his life.

**4.** SAME—ACTION ON POLICY—DEFENSE OF PAYMENT TO ASSIGNEE.

A debtor obtained policies of insurance on his life, which he assigned to his creditor as collateral security, with the assent of the insurance company, and the creditor thereafter paid all premiums on such policies. The debtor subsequently made a general assignment conditioned that all creditors accepting its benefit should release their claims in full. The creditor proved its claim under such assignment, and received dividends, but the amount of its debt remaining unpaid largely exceeded the amount of the policies. The debtor made no effort to reclaim the policies, but notified the company to cancel the same. The creditor, however, continued to pay, and the company accepted, the premiums thereon for more than 20 years, and until the death of the insured, when the creditor proved its claim thereunder, which was paid by the company. *Held,* that such payment was authorized, and constituted a defense to an action against the company on the policies on behalf of the estate of the insured, any claim of the estate to the amount collected in excess of the premiums paid being one which could only be asserted in an action against the assignee.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This is a suit by Ellen Hennessy, of the state of Texas, against the Manhattan Life Insurance Company, incorporated under the laws of the state of New York, for $9,000, being the amount of two insurance policies on the life of Patrick H. Hennessy, deceased. The Manhattan Life Insurance Company issued one of the policies on April 1, 1872, for $5,000, and the other on January 23, 1874, for $4,000. Each policy was payable to the "said assured, his executors, administrators, or assigns, within ninety days after due notice and satisfactory evidence of the death of the said Patrick H. Hennessy." Patrick H. Hennessy and M. P. Hennessy were partners in business, in Texas, under the firm name of P. H. Hennessy & Bro. This firm owed the J. L. Mott Iron Works, a corporation chartered under the laws of the state of New York, about $42,000, for which debt each member of the firm was individually liable. Patrick H. Hennessy assigned one of these policies as follows:

"The State of Texas, County of Galveston.

"Know all men by these presents, that whereas, the Manhattan Life Insurance Company, of the city of New York, state of New York, has heretofore, to wit, for value received, issued to me their policy of insurance in writing, bearing date April 1, A. D. 1872, whereby they insured my life in the sum of $5,000: Now I, Patrick H. Hennessy, of the city and county of Galveston, state of Texas, for and in consideration of my indebtedness to the J. L. Mott Iron Works, of the city of New York, state of New York, have sold, assigned, transferred, and set over, and by these presents do sell, assign, transfer, and set over, unto the said J. L. Mott Iron Works, all my right, title, and interest in and to the said policy of insurance, and all sum and sums of money, interest, benefit,

and·advantage whatsoever now due, or hereafter to arise, or to be had or made, by virtue thereof; to have and to hold the same unto the said J. L. Mott Iron Works, executors, administrators, and assigns, forever, as collateral security to the said J. L. Mott Iron Works. Witness my hand and the use of scroll for seal, at the city of Galveston, this April 13, A. D. 1872.

"P. H. Hennessy. [L. S.]"

The other one he assigned in these words:

"The State of Texas, County of Galveston.

"For value received I, the undersigned, having a policy on my life in the Manhattan Life Insurance Company, of New York, said policy being numbered 86,943, dated January 23, A. D. 1874, for the term of life from that date, for the amount of $4,000, annual premium $120.64, do hereby grant and transfer all my right, title, and interest in and to the same unto the J. L. Mott Iron Works of New York, and their assigns and successors. Witness my hand and scroll for seal this April 17, A. D. 1874.      P. H. Hennessy. [L. S.]"

Both assignments were duly acknowledged by Patrick H. Hennessy before William R. Johnson, notary public for Galveston county, Tex. Both policies were delivered to the J. L. Mott Iron Works, and remained in its possession. Due notice of each of these assignments of the policies was given by the said Patrick H. Hennessy to the Manhattan Life Insurance Company, which assented to the assignments. The firm of P. H. Hennessy & Bro., on August 23, 1875, executed a general assignment, which states "that it conveys all the property of the firm and its members not exempt by law." In this instrument the debt to the J. L. Mott Iron Works is estimated at over $42,000 principal. This assignment provides that the proceeds shall be distributed pro rata by the assignee to all the creditors who shall accept this assignment and sign a release in full of all claims and demands against the firm of P. H. Hennessy & Bro., and to those only. On November 1, 1875, the J. L. Mott Iron Works proved their claim with the assignee for $48,309, principal and interest, and received a dividend thereon on November 11, 1875, of 7 per cent., $3,381.63, and another and final dividend on March 22, 1876, of 3¾ per cent., $1,811.58; leaving unpaid $43,115.79. On the policy for $5,000 the J. L. Mott Iron Works paid the annual premiums from April 1, 1876, to April 1, 1896, amounting in the aggregate to $2,388.75. On the policy for $4,000 the J. L. Mott Iron Works paid the annual premiums from January 23, 1876, to January ·23, 1897, amounting in the aggregate to $2,156.07. Previous to these payments the premiums on the policies were paid by Patrick H. Hennessy. On January 18, 1879, Patrick H. Hennessy wrote to the Manhattan Life Insurance Company, stating that he was informed that the J. L. Mott Iron Works was keeping up the policies on his life "given them to secure the indebtedness to them of the late firm of P. H. Hennessy & Bro.," and that this firm was dissolved on August 25, 1875. Hennessy, in his letter, adds: "The assignment referred to provided that the creditors accepting it should take the property specified therein, and therefor give a discharge from all indebtedness. The J. L. Mott Iron Works accepted the assignment, received their pro rata under it, and thereby any further claim of theirs became canceled. They took the property for their claim, and their claim was thereby satisfied. This communication is to notify you of the facts as stated, and to demand, as the J. L. Mott Iron Works hold no insurable interest in my life, that the policies on my life in your company in their favor, or if assigned by them to others, be canceled, and rendered null and void." Patrick H. Hennessy made his last will on December 19, 1890. He gave all his property to his wife. He mentioned in the will that he had made provision for his children by a policy in the Ætna Life Insurance Company, but the policies involved in this litigation are not mentioned. His wife is made sole executrix. Patrick H. Hennessy died on February 13, 1897. The Manhattan Life Insurance Company was notified by the J. L. Mott Iron Works that it claimed the amount of the two policies as the assignee of Patrick H. Hennessy, and it also had notice that Ellen Hennessy claimed the policies as the executrix and sole legatee of her husband, Patrick H. Hennessy. In the course of the correspondence that ensued, the Manhattan Life Insurance Company, on March 11, 1897, wrote to the attorneys of Mrs. Ellen Hennessy as follows: "We also beg to notify you that the papers

on file in the office of this company indicate that the J. L. Mott Iron Works, of this city [New York], as the assignee of both policies, is entitled to payment thereof when by the terms thereof the payment is due, namely, ninety days after receipt of proof of loss, to wit, May 30 next. The company desires to make payment of the policies upon their due date upon the surrender of the policies with satisfactory proof of ownership by the lawful claimant." On May 11, 1897, the Manhattan Life Insurance Company wrote to the same attorneys: "As the whole of the proceeds of both policies is claimed by adverse claimants, Mrs. Ellen Hennessy, as executrix and wife, and by the J. L. Mott Iron Works, and [as] this company stands indifferent between the parties, we would be glad to have an opportunity to pay the money into court, that the respective rights of the claimants may be adjudicated." After the death of Patrick H. Hennessy, the J. L. Mott Iron Works and Ellen Hennessy each made due proof of loss on the two policies. The Manhattan Life Insurance Company paid the amount of the two policies, when they became due, to the J. L. Mott Iron Works on the surrender of the policies and the assignments of them. Ellen Hennessy sued the Manhattan Life Insurance Company for the amount of the two policies. She claims to be the owner of them as legatee and as executrix of Patrick H. Hennessy. The Manhattan Life Insurance Company, for defense, denied her ownership, and pleaded the payment to the J. L. Mott Iron Works. The court instructed the jury to find for the plaintiff, Ellen Hennessy, for the full amount of both policies, $9,000, with interest from May 30, 1897, and the defendant, the Manhattan Life Insurance Company, duly excepted. The jury rendered the verdict as directed, and judgment was entered on it, and the Manhattan Life Insurance Company sued out a writ of error to review the decision in this court. It is assigned as error that the court directed a verdict for the plaintiff.

George E. Mann and Edgar H. Farrar (B. F. Jonas and E. B. Kruttschnitt, on the brief), for plaintiff in error.

F. Chas. Hume (S. S. Hanscom, John Lovejoy, Alexander Sampson, and M. L. Malevinski, on the brief), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

An insurance policy is a chose in action, and, if without restrictive words, is assignable under the general principles of law. The policies in question here are assignable by their terms, because the underwriter has contracted with and promised to pay the "assured, his executors, administrators, and assigns." It was in the contemplation of the parties to the contract that it might be assigned, and in that event the express contract is to pay the amount of the policies to the assignee. This would not, of course, authorize an assignment, or make one valid that was against public policy and in conflict with principles opposed to wagering or speculative insurance. To make the assignment invulnerable to proper attack, the assignee must have an insurable interest in the life of the insured. The J. L. Mott Iron Works was a creditor of Patrick H. Hennessy to the amount of $42,000 when the policies were assigned to it. The policies in the aggregate amounted to only $9,000. Unquestionably, the creditor has an insurable interest in the life of his debtor to the amount of his debt. As the creditor himself may insure the life of his debtor, he can, on the same principle, accept an assignment of a policy on his life. The assignments of these policies, therefore, were not, at

their inception, open to the objection that the transaction was against public policy.

No question is raised as to the insurable interest of the J. L. Mott Iron Works in the life of Patrick H. Hennessy at the time of the assignment of the policies, but it is claimed that it had no insurable interest at the date of Hennessy's death. If it be assumed that the debt of Hennessy had been discharged or released by the acceptance by the J. L. Mott Iron Works of the benefit of the general assignment, would that affect the decision of this case? The doctrine once prevailed in England that in life as well as in fire and marine insurance there must be an insurable interest at the time of the loss as well as at the time of the insurance to support the policy. Godsall v. Boldero, 9 East, 72. But the later English cases hold that this rule is not good as applicable to life policies. The English rule now is that, if the insurable interest in the life existed at the time of the insurance, the contract is valid, and enforceable, even if there was no interest at the time of the loss. Dalby v. Assurance Co., 15 C. B. 365; May, Ins. (3d Ed.) § 115. In this country there is much conflict in the cases on this point, many of them refusing to adopt the later English rule. May, Ins. (3d Ed.) § 117. Justice seems to favor the view that the policy is good if an insurable interest existed when the contract of insurance was made, because otherwise, in cases like the one here under consideration, actual loss would result to the holder of the policy without fault on his part. If the debt of Hennessy to the J. L. Mott Iron Works had been paid, as claimed, there is no pretense that the premiums paid by the latter to the insurance company have ever been returned. The sum of the premiums would be a complete loss if the assignment of the policy is to lose all validity by the payment of the debt. Justice could only be reached by permitting a recovery by the assignee on the policy, so that he could be indemnified for the premiums paid by him. As to what claim the representatives of the insured would have on the fund in excess of the premiums, the debt having been paid, is not a question in this case. If the debt were in fact paid, the premiums not having been returned, the assignment would stand to secure the assignee for this outlay. The assignment, in that event, would at least be a designation by the insured of a person to receive the amount of the policy from the insurance company. Warnock v. Davis, 104 U. S. 775, 781, 26 L. Ed. 924. The assignee could retain what was due him, but would be liable to account to the representatives of the insured for the remainder. Page v. Burnstine, 102 U. S. 664, 26 L. Ed. 268. In Insurance Co. v. Bailey, 13 Wall. 616, 619, 20 L. Ed. 501, there is an approval of the later English doctrine. After stating that, to recover in fire and marine insurance, the insured must have had an interest in the property at the time of the loss, the court said:

"Life insurances have sometimes been construed in the same way, but the better opinion is that the decided cases which proceed upon the ground that the insured must necessarily have some pecuniary interest in the life of the cestui que vie are founded in an erroneous view of the nature of the contract; that the contract of life insurance is not necessarily one merely of indemnity for a pecuniary loss, as in marine and fire policies; that it is sufficient to show that the policy is not invalid as a wager policy, if it appear that the relation,

whether of consanguinity or of affinity, was such between the person whose life was insured and the beneficiary named in the policy as warrants the conclusion that the beneficiary had an interest, whether pecuniary or arising from dependence or natural affection, in the life of the person insured."

The court adds (the italics are ours) the following:

"Insurers in such a policy contract to pay a certain sum, in the event therein specified, in consideration of the payment of the stipulated premium or premiums, and it is enough to entitle the insured to recover if it appear that the stipulated event has happened, and that the party effecting the policy *had an insurable interest*, such as is described, in the life of the person insured *at the inception of the contract*, as the contract is not merely for an indemnity, as in marine and fire policies."

In Insurance Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, the case of Dalby v. Assurance Co., supra, is cited with approval. The court said:

"But supposing a fair and proper insurable interest, of whatever kind, to exist at the time of taking out the policy, and that it be taken out in good faith, the object and purpose of the rule which condemns wager policies is sufficiently attained; and there is then no good reason why the contract should not be carried out according to its terms. * * * In our judgment, a life policy, originally valid, does not cease to be so by the cessation of the assured party's interest in the life insured."

These expressions of the supreme court seem very pertinent to the question here examined, but neither case on the facts was exactly in point. In each case the insurable interest involved depended on the relationship between the insured and the beneficiary in the policy, but did not involve a question of debtor and creditor. The principles stated, however, sustain the view that an insurable interest existing at the time of the issuance of the policy is sufficient to sustain the contract. In Crotty v. Insurance Co., 144 U. S. 621, 624, 12 Sup. Ct. 750, 36 L. Ed. 568, the policy sued on was made payable to a named creditor if living, and, if he should die, to the executors, administrators, or assigns of the insured. Suit on the policy was brought by the creditor, alleging in his declaration the existence of the debt at the time of insurance and at the time of loss. The court held that to recover he must prove the continuance of the relation of debtor and creditor and the amount of the debt. In the course of the opinion the court said:

"If a policy of insurance be taken out by a debtor on his own life, naming a creditor as beneficiary, or with a subsequent assignment to a creditor, the general doctrine is that on payment of the debt the creditor loses all interest therein, and the policy becomes one for the benefit of the insured, and collectible by his executors or administrators. * * * But whatever doubts may exist as to the law applicable to such cases, or the rights of action on such a policy, the plaintiff in this case put his own construction on the contract, and tendered an issue which was accepted by the company. He alleged that he was a creditor at the time of the contract and at the time of the death. Upon the issue thus presented the case went to trial. The promise of the policy is to pay to Michael Crotty, his creditor, if living; and it is contended that this is an admission on the part of the company sufficient to justify a verdict against it. If an admission at all, it is good only as an admission of the date at which it was made, to wit, the date of the policy. The relation of debtor and creditor is not a permanent one, like that of parent and child, but one which may vary from day to day, changing both in fact and amount, according to the successive business transactions between the parties."

. In the case last quoted the policy was made payable on its face to Michael Crotty, his creditor, if living, and, if he should die, then to the executors, administrators, or assigns of the insured. On the trial no evidence was furnished of the plaintiff's interest in the policy except the policy itself. There was no evidence that the creditor had paid any premiums on the policy, or that the debt equaled in its sum the amount of the policy, or that the debt in fact ever existed. The creditor suing on the policy alleged the existence of the debt at the time of the contract and at the time of the death. Issue was joined on these allegations, and the plaintiff failed for want of evidence. We do not find in the result of this case any departure from the doctrine of Dalby v. Assurance Co., supra, which was previously cited with approval by the supreme court.

In the present case the assignment of the policies was made in good faith. The assignee's claim against Hennessy was much greater than the amount of the policies. The policies were delivered to the assignee. The underwriter was notified and assented. The assignee paid the annual premiums for a period of 20 years, paying in the aggregate $4,544.82. The assured, claiming that his debt to the assignee was discharged by law (it certainly had not been paid in fact), asserted no interest in the policy, but demanded its cancellation. The underwriter continued to receive the premiums from the assignee. On the death of the insured the assignee proved loss, and offered to deliver the assignments and policies on payment of the policies. On these facts the underwriter could surely be forced by suit to pay the assignee. The insurance company had agreed to pay him, and had received annual premiums for a number of years, paid on the faith of this agreement. In such case the law will enforce payment to the assignee, and, if others have equitable claims,—a question not for decision here,—they must be asserted in a suit to which the assignee is a party. Smith v. Insurance Co., 4 Dill. 353, Fed. Cas. No. 13,083; Insurance Co. v. Flack, 3 Md. 341; Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274; 2 May, Ins. (3d Ed.) § 459d; Insurance Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997; Investment Co. v. Baum, 29 Ind. 236; Swick v. Insurance Co., 2 Dill. 160, Fed. Cas. No. 13,692. The decisions of the New York court of appeals are to the effect that the assignee of the policy can collect and hold the proceeds even when he never had an insurable interest in the life of the insured. St. John v. Insurance Co., 13 N. Y. 31; Olmsted v. Keyes, 85 N. Y. 593. But the supreme court does not approve this doctrine. The rule established by the latter court is that the assignee must have an insurable interest. His position must be such that the policy could have been legally issued payable to him. Warnock v. Davis, 104 U. S. 775–782, 26 L. Ed. 924. On the undisputed facts we think that the assignee of these policies could have collected them by suit against the insurance company. The law that would enforce the payment to the assignee would be unjust and illogical if it failed to protect the insurance company in such payment against the claim of the assignor. The insurer has made no promise to pay twice. The appellee does not claim that the debt of Hennessy to the J. L. Mott Iron Works was actually paid. It is claimed that the acceptance by the latter of the

benefit of the general assignment was equivalent to payment. This general assignment was executed on August 23, 1875. The J. L. Mott Iron Works proved its debt, amounting to $48,309, and received dividends on the same on November 11, 1875, of $3,381.63, and on March 2, 1876, $1,811.63. This left due on the debt $43,115.79. But the deed of assignment provided that those who accepted the benefit of it should release their claims in full. The validity of state laws permitting assignments on such terms is recognized. Livermore v. Jenckes, 21 How. 126, 144, 16 L. Ed. 55. But, in the absence of statutory provision, it is a rule of the common law that the payment of a less sum at the time and place where a greater undisputed sum is due is not a satisfaction of the greater sum, even though accepted as such, because there is no consideration for giving up the rest. In the absence of a statute to the contrary, this rule prevails in Texas. Lanes v. Squyres, 45 Tex. 382, 385; Bennett v. Butterworth, 11 How. 669, 674, 13 L. Ed. 859. No Texas statute is called to our attention prior to the law of March 24, 1879, which is subsequent to the date of the assignment and the receipt of the dividends. Cunningham v. Norton, 125 U. S. 77, 81, 8 Sup. Ct. 804, 31 L. Ed. 624. This statute could not affect the transactions here considered. But such statutes, when applicable, serve only as a defense when pleaded. Their application does not constitute payment in the full sense. The equitable obligation of the debtor to the creditor would not be discharged. Even after discharge in bankruptcy, there remains a moral obligation to pay the debt that will sustain a new promise of the bankrupt. The fact that the debtor may be armed with a legal defense against the creditor does not destroy the insurable interest of the latter in the life of the former. The debtor may be an infant, and yet the fact that the plea of infancy might be interposed would not make the life policy in favor of his creditor void. 1 May, Ins. (3d Ed.) § 108. If the debt be barred by the statute of limitations, it nevertheless constitutes an insurable interest. Rawls v. Insurance Co., 27 N. Y. 282; 1 May, Ins. (3d Ed.) § 108.

The undisputed facts in the present case show that the J. L. Mott Iron Works had a continuing insurable interest in the life of Hennessy. Payment of the amount of the policies to the J. L. Mott Iron Works was, we think, a valid defense to this action. The circuit court erred in directing a verdict for the plaintiff. The jury should have been directed to find for the defendant. The judgment of the circuit court is reversed, and the cause remanded.