## LANE *et al.*, executors, *v.* HYAMS.

A person having a policy of insurance on his own life, payable to himself, "his executors, administrators, or assigns," sought to sell it; and an agent or broker for him procured a purchaser, had the insured to make an assignment, blank as to the name of the assignee, filled this in, received $4,768 from the assignee, and paid $695.22 to his principal. After the death of the insured, his executors claimed the proceeds of the policy, and, under a bill of interpleader filed by the insurance company in the Federal court, pleaded that the assignment was a wagering contract, contrary to public policy, and void, and obtained a decree for the

balance of the proceeds of the policy after reimbursing the transferee for the amount paid for the assignment and his expenditures for premiums and on account of a loan by the company to the insured (they conceding that such reimbursement should be made). *Held,* that in a subsequent suit by the executors to recover any balance received by the agent or broker from the assignee over and above what he had paid to his principal, and which should have been so paid, the plaintiffs were not debarred from recovering by the litigation and decree in the United States court.

JUNE 21, 1910.

Assumpsit. Before Judge Charlton. Chatham superior court. March 31, 1909.

John R. Young held an insurance policy on his own life for the sum of fifty thousand dollars in the Mutual Life Insurance Company of New York, on which policy he had borrowed four thousand dollars. M. Hyams Jr. was an employee in the office of the agent of the insurance company at Savannah. Young expressed a desire to sell his policy, and Hyams undertook to negotiate the sale. Hyams testified that he told Young that he could obtain $695.22 net for him, and Young signed an assignment in blank, which recited the consideration to be one dollar and other valuable considerations. Hyams completed the assignment to one Alexander, receiving from him $4,768, of which he paid to Young $695.22 and retained the balance for himself as a "commission." After Young died both his executors and Alexander claimed to be entitled to the amount of the insurance due. The company filed a bill of interpleader in the United States court. In their answer the executors of Young averred, "that said alleged assignment to said Max Alexander was and is null, void, and of no effect; that the taking and procuring thereof by said Max Alexander was a wager and speculation and a wagering and speculating contract; that said Max Alexander, at the time of said alleged assignment, had no insurable interest of any sort whatever in the life of said John R. Young, and does not now claim to have any such insurable interest; that said alleged assignment was immoral, contrary to public policy, and void." The executors recovered a decree. In the opinion filed by the presiding judge it was stated that the executors admitted that Alexander might equitably recover such sums as he had paid out for or on account of the policy, with interest on the same, and that "in view of this concession, decree will be taken accordingly," which was done. The executors then brought suit against Hyams

in the superior court of Chatham county, to recover the balance of the $4,768 which Alexander had paid to him for the assignment of the policy, less $695.22 which Hyams had paid to Young. On the hearing counsel for each of the parties moved that the court direct a verdict for the side represented by them respectively. The judge directed a verdict for the defendant. The plaintiffs excepted.

*Hitch & Denmark*, for plaintiffs.

*Osborne & Lawrence*, for defendant.

LUMPKIN, J. In the equity cause tried in the United States court a decree was rendered reimbursing Alexander for the various amounts expended by him, including the amount paid to Hyams, as representing the insured, for the assignment of the policy, the amount of premiums paid by the assignee for keeping up the policy, with interest thereon, and certain other amounts paid by him on account of the loan made by the company to the insured. It is true the presiding judge, in the opinion filed by him, stated that counsel for the executors conceded that Alexander should be repaid for such expenditures, and said: "In view of this concession, decree will be taken accordingly. He will, therefore, suffer no loss. He will have his whole outlay with seven per cent. interest." We do not understand, however, that it was thereby held that these amounts were not properly allowable to Alexander. Whether placed in the decree by virtue of a concession, or by virtue of a view that they should properly be allowed, the fact is that Alexander has under the decree received out of the proceeds of the policy the amount which he paid therefor to Hyams, and which was thus treated as paid to Young so far as Alexander was concerned. The judge of the superior court took the view, that as it was declared that the assignment of the policy of insurance was contrary to public policy and void, it was entirely void; that the executors of Young were not obliged to repay the amount thus paid on a wagering contract; and that if from motives of expediency they conceded such repayment, they did not have any right of action against Hyams. As to the premiums necessary to keep the policy in force, which were paid by Alexander, the judge stated in the opinion filed by him that he could see a difference, as they were necessary to keep the policy in life and produce the fund which was in controversy after the death of the insured. If the right of an assignee of a policy to have returned to him his expenditures in keeping the policy in life

were placed by the courts of the United States, not on the partial validity of the assignment, but on the ground that one thus producing or aiding to produce a fund for distribution in a court of equity should be reimbursed for his expenditures in so doing, or that if beneficiaries of a policy go into a court of equity and seek to have the assignment set aside they should do equity and reimburse the assignee, the position of our learned brother of the superior court bench would have weight. The United States district judge, presiding in the circuit court, who passed upon the equity cause involving the assignment and the distribution of the proceeds of the policy, relied to a considerable extent upon the decision in Warnock r. Davis, 104 U. S. 775 (26 L. ed. 924). In that case a person, on procuring an insurance upon his life, entered into an agreement with a firm, whereby the latter was to pay all fees and assessments payable to the underwriters on the policy, and to receive nine tenths of the amount due thereon at his death. Pursuant to the agreement, he executed an assignment of the policy, and the firm paid the fees and assessments. On his death, they collected from the underwriters nine tenths of the amount due on the policy, and his administrator sued the firm therefor. It was held that the administrator was entitled to recover the money so collected, with interest thereon, less the sums advanced by the firm. In the opinion delivered by Mr. Justice Field it was said: "To the extent in which the assignee stipulates for the proceeds of the policy beyond the sums advanced by him, he stands in the position of one holding a wager policy." Again, he said: "It was lawful for the association to advance to the assured the sums payable to the insurance company on the policy as they became due. It was also lawful for the assured to assign the policy as security for their payment. The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest." Still further, referring to the issuing of a policy to one having no insurable interest in the life of the assured, and the assignment of a policy to such a person, he said: "The same ground which invalidates the one should invalidate the other— so far, at least, as to restrict the right of the assignee to the sums actually advanced by him." In discussing the decision in Cammack v. Lewis, 15 Wall. 643, he said: "The case being brought to this court, it was held that the transaction, so far as the creditor

was concerned, for the excess beyond the debt owing to him. was a wagering policy, and that the creditor, in equity and good conscience, should hold it only as security for what the debtor owed him when it was assigned, and for such advances as he might have afterwards made on account of it; and that the assignment was valid only to that extent.". These excerpts indicate that an assignment of a life-insurance policy is not deemed by the Supreme Court of the United States to be necessarily wholly void because it includes a wagering element; but that it may be treated as valid for the amount of an indebtedness existing when it was made, or for advances made on account of it afterwards, with interest thereon, and only void as to the excess over and above such amounts. In Manhattan Life Insurance Co. v. Hennessy, 99 Fed. 64, 70 (39 C. C. A. 625), Judge Shelby, speaking for the Circuit Court of Appeals of the Fifth Circuit, referred to this subject, and his decision was cited in the opinion of the United States judge in the case arising under the bill of interpleader. In that case the question of the right to recover the amount paid for the policy, if the assignment were held void generally, was not discussed. In Russell v. Grigsby, 168 Fed. 577 (9), (94 C. C. A. 61), the question was directly involved. The policy was payable to the executors, administrators, and assigns of the insured. Before the third premium fell due, having met with financial misfortune, he was unable to meet it. He also needed a surgical operation, but was without means to obtain the services. In this condition he assigned the policy to another in consideration of $100 in money and an engagement by the assignee to pay the premium then past-due and future premiums, which the latter did. At the time of the assignment the assignee was neither a relative nor creditor of the insured. It was held by the Circuit Court of Appeals of the United States for the Sixth Circuit that the assignment was void for want of an insurable interest in the assignee, and that he was only entitled to receive from the proceeds of the policy the amount actually paid and advances for subsequent premiums. Judge Lurton, who has since been elevated to the Supreme Bench, after a full discussion of the case, said: "The conclusion of the whole matter is that the assignment is valid to the extent of the money actually paid for it as well as for all advances for premiums subsequently made. Beyond this it is a gambling contract and not enforceable." Thus the amount of

money paid to the insured, and thereby inuring to his benefit, seems to have been considered as standing on a like basis with a debt already existing or one subsequently arising by virtue of advances afterward made. Apparently it was not thought to make any material difference whether the money was loaned before the assignment, or at the time of the assignment, or agreed to be and actually advanced after the assignment, or paid to the assignor for the assignment, so far as the right of reimbursement and the partial validity of the assignment for that purpose was concerned.

We are not now considering the question of the assignability of the policy as an original proposition either on principles of general law or with reference to a construction of a section of our code. See, in this connection, *Rylander* v. *Allen*, 125 *Ga*. 206 (53 S. E. 1032, 6 L. R. A. (N. S.) 128). Neither are we discussing the question of dealing with a single assignment as infected with a wagering element, yet good in part and bad in part. The rights of the executors of the insured and of the assignee have been decreed by a court having jurisdiction of the parties and the subject-matter. Under that decree the assignee was reimbursed the amount paid for the policy, treating the payment by him to Hyams as equivalent to a payment to Young, the insured. The question we have to deal with in the present case, so far as it is affected by the litigation and decree in the United States court in the former case, is what is the status between the executors of the insured and Hyams, who they claim was the agent of the insured, received money for him, and unlawfully retained a portion of it. If, under the decisions of the United States courts (in one of which that case was tried), the assignment was not absolutely void, but was valid to the extent of the money paid for it and subsequent advances, and if Hyams received such money as the agent of the assured, and the executors of the insured have had to account for the amount so paid, it is not easy to see why he should be allowed to illegally retain a part of it from his principal or the executors of the latter. Hyams was not a party in the former litigation; but it is claimed that he was the agent of the insured whose executors were parties, and that through him the contract was made. If an agent received money for his principal, and such payment was in law a payment to the principal, and the resulting assignment of the policy was valid to the extent of the amount of

such payment and other advances, and the principal accounted for it under a decree in a litigation with the other party to the contract, the agent ought not to be allowed to pocket a portion of the money thus received and defend himself on account of the decision declaring the assignment generally void. If we have correctly apprehended the decisions of the United States courts, as above discussed, then the executors of Young did not merely give away this sum to Alexander or concede it to him as a matter of grace, but as matter of right under such adjudications; and in that event, their concession did not operate as a release to Hyams, as indicated in the opinion filed by the judge of the superior court.

It is not necessary to deal with the evidence of Hyams as to what his real relation to the insured was, or in regard to his conduct in the transaction, or as to the agreement of Young in regard to receiving a "net" amount. The presiding judge directed a verdict for the defendant because of the former litigation and its result. We can not concur in the view that such a verdict was demanded.　　　*Judgment reversed.　All the Justices concur.*