## FIRST NAT. BANK OF LOCKNEY v. LIVESAY.

### No. 3567.

Court of Civil Appeals of Texas. Amarillo.
March 18, 1931.

Rehearing Denied April 15, 1931.

L. C. Penry, of Fort Worth, for appellant.
Joiner & Cook, of Plainview, for appellees.

RANDOLPH, J.

This suit was originally instituted by Floriday J. Livesay and the heirs of J. T. Livesay, deceased, seeking to recover on two $1,000 policies of insurance on the life of J. T. Livesay, issued to the First National Bank of Lockney, Tex., as beneficiary, by the Plainview Mutual Life Insurance Association of

Plainview, Tex. Subsequently, by leave of court, E. G. Livesay, temporary administrator of the estate of J. T. Livesay, was substituted as plaintiff and the original plaintiffs were thereupon dismissed from the suit.

On trial before the court without a jury, judgment was rendered in favor of said E. G. Livesay, administrator, aforesaid, for the sum of $1,940, with interest from date of judgment at 6 per cent. per annum, as against the defendant Plainview Mutual Life Insurance Association and that the bank take nothing on its cross-action against said defendant insurance association, and also rendered judgment in favor of the Plainview Mutual Life Insurance Association against the defendant bank for the sum of $940 with interest.

From this judgment the First National Bank of Lockney, Tex., has appealed to this court.

J. T. Livesay was indebted to the defendant bank in the sum of $2,786 on a note dated at Lockney, Tex., February 21, 1927, due March 10, 1927, payable to the order of defendant bank and bearing interest from maturity until paid. There is an agreement upon the following as facts by the parties hereto: It is admitted that there were two insurance policies issued on the life of J. T. Livesay by the defendant insurance company, payable to the defendant First National Bank of Lockney, each of said policies being in the sum of $1,000, issued before Livesay died and valid and in force at the time of his death. It is also admitted that one of these policies of $1,000 has been paid by the defendant insurance company to the defendant bank. It is further agreed that there was no proof as to whether J. T. Livesay knew anything about the insurance or not at the time the policies were issued and that the insured Livesay died the 11th of May, 1930. E. G. Livesay has qualified as temporary administrator of the estate of J. T. Livesay, deceased, and the court ordered and directed that E. G. Livesay prosecute this suit.

It is agreed that the policy that has been paid was in group 3 and that it was paid before any notice of any claim by the heirs was given on the 1st of July, 1930. It is admitted that the defendant bank paid the premiums amounting to $60, and that there is another $1,000 in the hands of the Plainview Mutual Life Insurance Association of Plainview, subject to the orders of the trial court to be entered in this cause.

At the time of the issuance of the two policies there was an amount in excess of the amount of same owing to the defendant bank.

As stated, there is no evidence to show that the policies were taken out with the knowledge or consent of the insured, and it is also admitted that the insured is now deceased and that on March 2, 1927, the deceased was given a discharge in bankruptcy prior to his death. The record also shows that subsequent to J. T. Livesay's bankruptcy, he made the following payments on the note to the bank, to wit: 3—4—27, $5; 4—16—27, $125; 1—13—28, $12.50; 1—16—28, $25.

The question for our decision is: Did the bank have an insurable interest in the life of J. T. Livesay at the time it took out the insurance policies?

The appellee contends that as the deceased, prior to the issuance of the insurance policies, had filed his voluntary petition in bankruptcy and later had been discharged in bankruptcy, he was not a debtor of the bank, because he had listed the note in his bankruptcy schedules and was discharged from the debt. Hence, the bank had no insurable interest in his life, as the note had never been renewed in writing. As sustaining their theory of the case, they cite Kruegel v. Murphy & Bolanz (Tex. Civ. App.) 177 S. W. 1018, 1019; Armstrong v. Neblett (Tex. Civ. App.) 19 S.W.(2d) 362; Price v. Knights of Honor, 4 S. W. 633; Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107; Warnock v. Davis, 104 U. S. 775, 779, 26 L. Ed. 924; Northwestern Mutual Life v. Whiteselle (Tex. Civ. App.) 188 S. W. 22.

In the case of Kruegel v. Murphy & Bolanz, supra, it is held by the Dallas court that the discharge in bankruptcy satisfied the judgment against the bankrupt. This holding is evidently not intended to declare that the debt was thereby paid, for the court limits the extent of the same by the further holding that as a consequence Kruegel had no legal right to have process issued for its enforcement.

In the Armstrong Case the Fort Worth court was passing upon the question of the sufficiency of a promise to pay the debt which had been discharged and did not attempt to decide the question here at issue.

The Price Case simple holds that in Texas the assignment by one of an insurance policy upon his own life to his cousin, who lived with him as an adult male member of his family and was dependent upon the insured for employment and support, upon an agreement by the assignee to pay the assessments necessary to keep the policy in force, is void as being to one who has no insurable interest in the life of the insured and as being against public policy.

In the Cheeves Case, the Supreme Court holds that a partner havng obtained a policy of insurance upon his life, payable to himself and his partner or their administrators and assigns, the premium on which was paid out of the partnership assets and afterwards, on the dissolution of the partnership, conveyed all his interest to the firm property to his partner, and then died, the continuing part-

ner, having no interest in the life of the insured at the time of the latter's death, cannot recover on the policy as against the estate of the insured.

█ In the Warnock Case, the Supreme Court of the United States holds that a policy on the life of a person is not assignable to one with no insurable interest in the life of the deceased and defines insurable interest as follows: "It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

In the Whiteselle Case, the Texarkana court holds that a wife, named as a beneficiary in a policy, after divorce has no insurable interest in her former husband's life.

█ The solution of the question before us depends upon the relationship existing between the bank and the deceased—whether or not the bank had a pecuniary interest in the continuance of the life of the insured. As we see it, there is no question of the right to a legal enforcement of the bank's claim, but a moral obligation on the part of the insured to pay a debt which had not been paid, which the insured had recognized by repeated payments on the debt owed to the bank, made after his discharge in bankruptcy. That the debt has not been paid, but is simply unenforceable, is the almost unanimous holding of the decisions of the courts of the various states of the United States and of the Supreme Court of the United States.

Black on Bankruptcy, Hornbook Second Edition, § 300, lays down the rule: "If a particular debt was provable in bankruptcy and not within the excepted classes, the discharge in bankruptcy bars any further legal proceedings for its collection. But does not extinguish the debt so as to render it incapable of renewal, nor does, it relieve the debtor of a moral obligation to pay the unsatisfied balance." "It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. * * * The theory is that the discharge destroys the remedy, but not the indebtedness. * * *" Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 367, 57 L. Ed. 676.

It is apparent, therefore, that the debt continues to exist after the discharge of the bankrupt and that the debtor is under a moral obligation to pay it. For this reason, if a creditor sues a debtor who has been discharged in bankruptcy and the debtor fails to plead such discharge as a defense, judgment will be rendered against him. Coffee v. Ball, 49 Tex. 16; Manwarring v. Kouns, 35 Tex. 173.

A promise to pay a debt which is barred by limitation is based on a sufficient consideration because of the moral obligation resting upon the debtor to pay it. Burnham, etc., Co. v. McMichael, 6 Tex. Civ. App. 496, 26 S. W. 887, writ denied; Goldfrank, etc., Co. v. Young, 64 Tex. 432; Howard v. Windom, 86 Tex. 560, 26 S. W. 483; Building & Loan Association v. Goforth, 94 Tex. 259, 264, 59 S. W. 871.

█ This being the rule applicable to debts barred by limitation or discharged by bankruptcy proceedings, we do not see why the moral oligation should not furnish such a pecuniary relationship as to create between the debtor and the creditor such a moral obligation as would furnish an insurable interest to the creditor in the life of the debtor. Especially is this true where the debtor has shown repeatedly, by making payments on the debt after his discharge in bankruptcy, that he recognized the moral obligation to pay the debt. Having received from the debtor such recognition of his moral obligation, there can be no reason for the creditor to think that the debtor would not continue to feel the weight of such moral obligation to pay. Hence, there was a vital pecuniary relationship between them.

We have been unable to find a case in the Texas Reports passing upon the particular point herein involved, but the decisions below cited apparently settle the matter in favor of the defendant bank's contention.

In the case of Conn. Mutual Life Insurance Co. v. Schaefer, 94 U. S. 457, 460, 24 L. Ed.

251, 253, the United States Supreme Court says: "It is well settled that a man has an insurable interest in his own life, and that of his wife and children; a woman in the life of her husband; and the creditor in the life of his debtor. * * * And in cases where the insurance is effected merely by way of indemnity, as where a creditor insures the life of his debtor, for the purpose of securing his debt, the amount of insurable interest is the amount of the debt."

A moral obligation is sufficient to give the creditor an insurable interest in the life of the debtor. Manhattan Life Insurance Co. v. Hennessy (C. C. A.) 99 F. 64.

"The discharge in bankruptcy did not destroy the moral obligation of the debtor to pay his debt. * * * The discharge when granted operates to cut off the creditor's remedy for the enforcement of his debt by judgment and execution as fully as the statute of limitations. And the nature of either of the two defenses does not suggest any distinction between them, so far as they may affect the question of an insurable interest in a creditor, after the right to interpose such a defense has arisen in favor of the debtor." Ferguson v. Mass. Mutual Life Insurance Co., 32 Hun, 306.

These being the facts and this being the rule, the trial court erred in rendering judgment for the plaintiff. The judgment of the trial court is therefore reversed and is here rendered that the plaintiff take nothing by his suit and that the defendant bank have judgment for the sum of $1,000 against the defendant Plainview Mutual Life Insurance Association of Plainview, Tex., that the Plainview Mutual Life Insurance Association take nothing as against the defendant bank, and that all costs be taxed against E. G. Livesay, administrator.