82 U.S. 643
 21 L.Ed. 244
 15 Wall. 643
 CAMMACK
v.
LEWIS.
 December Term, 1872
 
 APPEAL from the Supreme Court for the District of Columbia; the case being thus:
 One John E. Lewis, of Washington, D. C., being in bad health and owing by note $70, which he was not then able to pay, to a certain C. Cammack, Jr., tailor, for clothing, procured June 19th, 1868, at Cammack's suggestion, an insurance on his life, in the New Jersey Mutual Life Insurance Company, which had an agency in Washington, for $3000. The policy, No. 2885, was for seven years. Cammack paid the premium for the first year; and immediately after the policy was made out, Lewis gave to Cammack a note for $3000; there having been no consideration for the same; and assigned the policy to him. On the 9th of January following that is to say, seven months after the issuing of the policy—Lewis died, leaving a widow and two children; and Cammack having paid, of course, but the first year's premium, a sum of $25. After Lewis's death there was found among his papers a document, in Cammack's handwriting, thus
 'WASHINGTON, D. C., September 15, 1868.
 'This agreement witnesseth that I, the undersigned, for value received, do bind myself, and heirs, or legal representatives, to pay unto Maggie Lewis, wife of John E. Lewis, his heirs and assigns, the sum of one thousand dollars, in event of the said John E. Lewis's death; the said amount being first realized by me from an insurance on his (the said Lewis's) life, duly assigned to me, and held by me, otherwise this agreement to be held null and void. Number of the policy 2885, in the New Jersey Mutual Life Insurance Company.
 'C. CAMMACK, JR.'
 Among Lewis's particular friends was a Mr. W. E. Chandlee, of Washington, whom he was in the habit of consulting on business matters. About a week before his death, Lewis showed to him the draft of a will of which he desired Chandlee to be executor. And with a view of enabling Chandlee to properly administer things, he dictated to him a list of all the debts which he, as he said, expected would be brought in against his estate, and which he desired Chandlee as his executor to pay. Among them was the $70, due by the note to Cammack for clothing, and '$25 on account of life insurance.' Chandlee knew what this last item was for, without explanation; for Lewis had consulted him previously to his life's being insured, and told him that it was insured very soon after the policy issued. 'His statement to me,' said Chandlee, in giving an account of the matter, 'was that his life was insured by Mr. Cammack, in the New Jersey Mutual Life Insurance Company, for the sum of $3000, and that at any time that he was able to pay to the said Cammack the amount of premiums that the said Cammack should have paid on account of the policy, with interest on the same, and the amount he owed Cammack for clothing, that Cammack would restore the policy to him.'
 Cammack was not present at any part of this account, and when it was told to him he denied the correctness of Lewis's understanding of the matter.
 Lewis did not live to sign his will, and so Chandlee did not become his executor in form. Still, 'feeling,' as he said, 'disposed to render the same assistance to his widow as if the will had been signed, and Lewis having put into his possession for safe-keeping his private papers, among which was the memorandum set out above and signed by Cammack,' he went and saw Cammack, who had already made application to the insurance company for the amount of the insurance. Chandlee's account of the whole transaction was thus:
 'Cammack told me that it might save time and trouble to have a written requisition from Mrs. Lewis, upon the company, to pay the money over to him (Cammack), as they might consider it their duty, otherwise, to pay it over to her, in which case it would occasion delay; but he didn't know that it would be necessary. I remarked to him that I didn't think it would make any difference as far as his claim was concerned, whether the money was paid to him directly, or to Mrs. Lewis; that I felt sure she would settle the matter, as called for in the agreement, and I would take the responsibility that she would do so. I then saw Mrs. Lewis and asked her if she intended to settle the matter of insurance in which Cammack was interested, according to the agreement in my possession. She expressed her willingness that it should be settled on that basis, just as Mr. Lewis had provided that it should be. Mr. Cammack then wrote a requisition for Mrs. Lewis to sign, gave it to me, saying, 'Take this to Mrs. Lewis, and see if she will sign it. If she objects, and the company will not pay the money to me, I will let them pay it to her, and trust to her for a settlement.' I took the requisition to Mrs. Lewis, told her what it was for, and she signed it. It was thus:
 'WASHINGTON CITY, D. C., January 20th, 1869.
 'TO THE NEW JERSEY MUTUAL LIFE INSURANCE CO.
 'GENTLEMEN: The claim of C. Cammack, Jr., of said city, secured by assignment of policy No. 2885, in your company, on the life of my late husband, John E. Lewis, is a just and legal claim, and it is my desire and direction that your company pay to said Cammack the proceeds thereof.
 'Witness may hand and seal on the aforementioned date.
 'MRS. J. E. LEWIS.' [SEAL.]
 'Witness:
 'W. E. CHANDLEE,
 'JAMES GRIFFITH.'
 'On this request Cammack made an affidavit thus:
 'DISTRICT OF COLUMBIA,
 WASHINGTON CITY, ss:
 'C. Cammack, Jr., of city aforesaid, being duly sworn, saith that he was acquainted with John Edward Lewis, deceased, during his lifetime; that he was the person insured under policy No. 2885, is the New Jersey Life Insurance Company, which said policy was assigned to the deponent; that the full and true sum of three thousand dollars was and is now due to me from said John Edward Lewis or his estate; and that no part of the said sum has been paid this deponent by said Lewis or any one on his behalf.
 'C. CAMMACK, JR.
 'Sworn to and subscribed before me this 23d January, 1869.
 [SEAL.]
 'J. H. MCCUTCHEN,
 'Notary Public.'
 On this request and affidavit Cammack got the $3000 from the insurance company, and sent to Mrs. Lewis his check for $950, with a memorandum is one corner. The whole was thus:
 No. 459.
 WASHINGTON, D. C., February 5, 1869.
 NATIONAL METROPOLITAN BANK,
 Pay to ..... Mrs. John E. Lewis, ..... or Order, nine hundred and fifty dollars.
 C. CAMMACK, JR.
 $950.00.
 In full for her proportion of policy No. 2885, in the New Jersey Mutual Life Insurance Co.
 The check, of course, was in professed discharge of the paper dated September 15th, 1868, supra, p. 644; the sum sent being one-third of the $3000, less a deduction of $25 for the premium paid for insurance, and for another small account which Cammack had against Lewis.
 Mrs. Lewis went with Mr. Chandlee to the bank, where under his eye she indorsed the check and drew the money; $950.
 At a subsequent date, having taken out letters of administration on her husband's estate, in which as already mentioned there were besides herself two children to participate, she filed a bill to recover the remainder of the $3000.
 Cammack set up, by way of defence, that the policy was taken out under an agreement between Lewis and himself that he should pay the premiums for the seven years the policy was to run, and in consideration of those payments, and what Lewis owed him, he should, in the event of Lewis's death during the life of the policy, receive two-thirds of the amount of the policy, and pay over the other third to Lewis's wife or his heirs; and in support of this he relied on the instrument signed by himself, dated September 15th, 1868, and, as already stated, found among Lewis's papers; and relied on the further fact of that sum (with a small and just deduction) having been received by Mrs. Lewis, on the policy. But the defence was not sustained; and the court below, holding that Cammack held the policy under the assignment as a mere security for what Lewis owed him, decreed that he should pay over the balance after deducting that small sum. From the decree Cammack appealed.
 Mr. T. T. Crittenden, for the appellant; Messrs. A. McCallum and T. J. Durant, contra.
 Mr. Justice MILLER delivered the opinion of the court.
 
 
 1
 If the transaction as set up by Cammack be true, then, so far as he was concerned, it was a sheer wagering policy, and probably a fraud on the insurance company. To procure a policy for $3000 to cover a debt of $70 is of itself a mere wager. The disproportion between the real interest of the creditor and the amount to be received by him deprives it of all pretence to be a bon a fide effort to secure the debt, and the strength of this proposition is not diminished by the fact that Cammack was only to get $2000 out of the $3000; nor is it weakened by the fact that the policy was taken out in the name of Lewis and assigned by him to Cammack. This view of the subject receives confirmation from the note executed by Lewis to Cammack for the precise amount of the risk in the policy, which, if Cammack's account be true, was without consideration, and could only have been intended for some purpose of deception; probably to impose on the insurance company.
 
 
 2
 Under these circumstances, we think that Cammack could, in equity and good conscience, only hold the policy as security for what Lewis owed him when it was assigned, and such advances as he might afterwards make on account of it, and that the assignment of the policy to him was only valid to that extent.
 
 
 3
 Whether Lewis was a participant in the fraud, does not fully appear. Such conversations of his as are proved tend to show that he looked upon Cammack as a friend, to whom he was willing to trust the policy assigned, and that he never supposed more would be claimed by Cammack than what he owed him. It is also probable that he believed he would survive the life of the policy, and with the single exception of the note for $3000, given by him without consideration, there is nothing proved against him inconsistent with that view of the matter, and with his fair dealing. At all events, we do not see such evidence on his part of a corrupt transaction, as to forbid the court from doing justice between his administratrix and Cammack, after the amount secured by the policy has been paid by the company to the latter.
 
 
 4
 The receipt of the one-third of the insurance money by the complainant does not, we think, under all the circumstances of the case, conclude her as a settlement of the matter in dispute. It is obvious that she was ignorant of the full extent of her rights; that she acted hastily and without due consideration, and was largely influenced by the advice of Mr. Chandlee, who had been her husband's friend and adviser, and who was prompted to do what he did by Cammack, while in ignorance of many of the facts of the case.
 
 
 5
 Besides, the bill in this case, as appears on its face, is brought by her as administratrix, and the receipt by her of the one-third paid on the policy was before any administrator had been appointed. If she has a right to recover all the $3000 as administratrix, it could not be defeated by her receipt of $1000, paid to her in her own right before any administration had been taken out on Lewis's estate.
 
 
 6
 On the whole, we are of opinion that the decree of the Supreme Court should be affirmed, and it is
 
 
 7
 SO ORDERED.