## MORRIS *et al. v.* DODD, trustee.

A policy of insurance on the life of a bankrupt, though payable to his legal representatives, does not, if it have no cash surrender value, vest in the trustee as assets of the bankrupt's estate.    Accordingly, where a husband, within four months prior to the filing of his petition in bankruptcy, transferred to his wife an insurance policy on his life, which before such transfer was payable to his legal representatives, it was erroneous, on the petition of the trustee, filed upon the death of the bankrupt, pending the proceedings in bankruptcy, for the court to enjoin the widow from collecting, and· the insurance company from paying to her, the amount due upon the policy, it appearing that it had no cash surrender value either when the transfer was made or the petition in bankruptcy was filed.

Argued March 21,— Decided April 11, 1900.

Injunction.    Before Judge Lumpkin.    Fulton superior court.    January 17, 1900.

*J. A. Anderson, King & Anderson, Dorsey, Brewster & Howell,* and *Arthur Heyman,* for plaintiffs in error.
*Mayson & Hill* and *O. E. & M. C. Horton,* contra.

FISH, J.    This was a petition filed by Harry Dodd, trustee of the estate of John F. Morris, bankrupt, against his widow, Mrs. V. A. Morris, the Mutual Reserve Fund Life Association of New York, and the Northwestern Mutual Life Insurance Company, in which it was sought to enjoin Mrs. Morris from collecting, and the two insurance companies from paying to her, the amounts of insurance policies issued by the defendant companies upon the life of the bankrupt.    The Northwestern Company paid the money due upon the policy issued by it into the registry of the court, to await the final decree of the court. Mrs.·

Morris and the other insurance company answered the petition. Upon the hearing it appeared that each of the insurance companies had issued a policy upon the life of John F. Morris, payable to his legal representatives; that the one by the Northwestern Company was issued in 1890, the date of the issuance of the other not appearing. It further appeared that, during the month of April, 1899, Morris surrendered his policy in the Mutual Reserve Fund Life Association, and the association thereupon issued a new policy, upon the same terms as the old, in which new policy Mrs. V. A. Morris, his wife, was the beneficiary, and that during the same month Morris assigned the policy which he held in the Northwestern Company to his wife, the assignment being accepted by the company. Morris's petition in voluntary bankruptcy was filed on the 29th day of the same month. He died in the following October, pending the proceedings in bankruptcy, and immediately after his death Dodd, the trustee of his estate, filed this petition. The contention of the trustee was, that the transfers of the policies were made with intent to hinder, delay, or defraud the creditors of the bankrupt, and, having been executed within four months prior to the filing of the petition in bankruptcy, were void, and that the policies vested in the trustee at the time of the adjudication in bankruptcy, as part of the assets of the bankrupt's estate. Section 67 e of the bankrupt act of 1898 provides, " That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed," etc., "shall . . be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors." Section 70 a of the act provides: "The trustee of the estate of a bankrupt, upon his appointment

and qualification, . . shall . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, . . to all . . property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: *provided*, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings; otherwise the policy shall pass to the trustee as assets."

Under the view we take of the question presented for determination, it is immaterial that the policies of insurance were transferred by the bankrupt to his wife within four months prior to the filing of his petition in bankruptcy. Upon the hearing there was no evidence submitted for the trustee that either of the policies had any cash surrender value, either at the time of the transfer or at the time of the filing of the petition in bankruptcy, but there was much evidence in behalf of the defendants that the policies had no such value at either of the times indicated. If the policies, then, had no cash surrender value, we are of opinion that they would not vest in the trustee as assets of the bankrupt's estate, even if no changes had been made in them, and they had, to the date of his death, remained payable to his legal representatives. The exact point was decided In re Buelow, 98 Fed. Rep. 86, where it was held: "A policy of insurance on the life of a bankrupt, which has no cash surrender value, and no value for any purpose except the contingency of its becoming valuable at the death of the bankrupt if the premiums are kept paid, does not vest in the trustee as assets of the estate," and the court directed the trustee to deliver the policy to the petitioners, the bankrupt and his wife. District Judge Shiras, In re Steele, 98 Fed. Rep. 78, while holding that where a bankrupt held a policy payable to himself, his heirs or legal

representatives, the surrender value thereof would be part of the assets of his estate in bankruptcy, very clearly intimated that this would not be so if the policy had no cash surrender value. To the same effect, see In re Lange, 91 Fed. Rep. 361. In the case of Ætna National Bank v. United States Life Ins. Co., 24 Fed. Rep. 770, it was held, that a bill in equity could be maintained by creditors of a deceased debtor to reach premiums paid to a life-insurance company in fraud of them, but that they could have no claim upon the insurance, even in such a case, beyond the amount of the premiums and the interest thereon. Under the bankruptcy act of 1867, In re McKinney, 15 Fed. Rep. 535, it was held: " An assignee in bankruptcy has no insurable interest in the life of a bankrupt, at least after his discharge. Upon a policy on the life of the bankrupt, payable at his death to his executors, administrators, or assigns, with an equal premium payable annually during the bankrupt's life, the only beneficial interest which passes to the assignee in bankruptcy is its surrender value or net reserve at the time of the bankruptcy. Beyond that interest the policy, so far as respects any future insurance under it, would be a burden rather than a benefit, which the assignee is not authorized to continue, and the assignee takes the legal title to the policy for the purpose of making the surrender value or net reserve available to the estate. "

In Holt v. Everall, an English case, decided by the Court of Appeal, under the British bankruptcy act of 1869, reported in 34 Law Times Rep. (N. S.) 599, it appeared that in 1870 a trader effected policies of insurance on his own life. In the following year, wishing his wife might have the benefit of the policies under the married woman's act, he surrendered them to the insurance company, and received, in substitution therefor, policies at the same premiums payable on the same day, and entitled to the same privileges as the former, and which provided that the sums assured should be paid to the wife. Within two years from the date of the substituted policies the husband liquidated, dying before the discharge. The trustee claimed the insurance. It was held, that as the policies of 1870 had no surrender value, the transaction of the following year was not a settlement of property under the bankruptcy act of 1869, and that the widow

was entitled to the policy money. In speaking of the substitution of one policy for another, James, L. J., in his opinion, said: "If it could be made out that this was a device to avoid the 91st section of the bankruptcy act of 1869, and that there was any actual property, anything which the court could construe as of value, settled at that time, then probably the court would say: We cannot allow a device to be resorted to for the purpose of making that thing appear to be not a settlement which was in truth a settlement. . . In that point of view, it is important to see whether there was any actual property—anything that could be called property — at the time when the husband effected the policies in question. If the husband at that time gave up anything of real value as part of the consideration for the new policies, there might be some question, but I am satisfied that that which was given up was not of the slightest value whatever, that there was nothing taken away from the creditors in point of substance, and that the transaction, as far as the creditors were concerned, was in substance exactly the same as if the policies in 1871 had been made without any reference whatever to the existing policies of 1870, which the husband might have given up at any moment he liked, or forfeited, or done anything he liked with. Therefore there is nothing substantial arising from the fact that the policies of 1871 were in exchange for the policies of 1870." Mellish, L. J., in his concurring opinion, used the following language: "I agree with the Lord Justice, . . that if the surrendered policy really was in substance worth nothing, if it was a policy which an insolvent man would naturally allow to drop, it is very difficult to see what object an insolvent trader knowing that he is going to become a bankrupt has in keeping up a policy on his life, and paying the premiums, knowing that the money will go for the benefit of his creditors, or perhaps not for their benefit, because if the policy was such as this was, which had only been effected for a single year, it does no benefit to the creditors. What a trustee in bankruptcy does, if such a policy comes into his hands, is to see if he can get anything from the insurance office, and all the creditors are deprived of is the surrender value of the policy; and if there is no surrender value we may consider that the new policy effected

instead of it comes within the protection of the act" (the married women's property act). In *Exchange Bank of Macon* v. *Loh,* 104 *Ga.* 446, this court held that the only insurable interest a creditor has in the life of his debtor is for the purpose of indemnifying himself against the loss of his debt, and that such interest can not exceed in amount that of the indebtedness to be secured. The purpose of the bankruptcy act is to take the property owned by the bankrupt when the petition is filed and apply it toward the payment of his then-existing debts, discharging him in due course from any further liability, his after-acquired property not being subject to such debts. This being true, it is apparent that the creditors represented by the trustee, whose debts can not continue against the bankrupt, can have no insurable interest in his life for the purpose of indemnifying themselves against loss. In view, therefore, of the authorities cited and the language of the act itself, it seems that a policy of insurance on the life of a bankrupt, though payable to his legal representatives, does not vest in the trustee as assets of the bankrupt's estate, if the policy has no cash surrender value. It follows that, under the evidence submitted upon the hearing, the learned trial judge erred in granting the injunction.

*Judgment reversed. All the Justices concurring.*