In re SLINGLUFF.

(District Court, D. Maryland. December 21, 1900.)

1. BANKRUPTCY—ASSETS—ENDOWMENT POLICY.

An endowment policy of insurance on the life of a bankrupt, payable to him, with accumulated dividends, if he survives the term, or, in case of his death before its maturity, to his wife, which by its terms is assignable, but has no surrender value, passes to his trustee, under Bankr. Act 1898, § 70a, cl. 5, as property which he could have transferred; and if such policy has an actual value, which by any practicable means can be realized and made available for the payment of debts, the creditors are entitled to the benefit of it. Where the amount of such a policy is considerable, and it will mature before the estate can be closed, the trustee may, with the sanction of the court and the assent of the creditors, retain it, and pay the remaining premiums as they mature; and, in case the amount is realized, the creditors will be entitled at least to the proportion equitably to the credit of the policy at the date of the adjudication, with the outlay for premiums.

2. SAME.

The proviso to Bankr. Act 1898, § 70a, cl. 5, is not intended to define the class of life insurance policies, title to which vests in the trustee, and limit the same to such policies as have a cash surrender value, but to give to the bankrupt a privilege with respect to such policies; and even such privilege is conditioned on payment to the trustee of the full value of the policy, as an asset of his estate. An endowment policy payable, with accumulated profits, to the insured at the end of a specified term, but providing that in case of his death during the term the principal sum shall be paid to a beneficiary named, has two features. Primarily it is an investment for the benefit of the holder, and secondarily a policy of life insurance for the benefit of the beneficiary. There is no joint interest between the two, but so long as the holder lives the policy is his property, and on his bankruptcy constitutes assets of his estate for the benefit of his creditors, like any other investment of his capital; and the title vests in his trustee, who may dispose of it in any manner by which it can be made of value to the estate, or, with the sanction of the court, disclaim it.

In Bankruptcy. In the matter of the petition of Nannie J. Slingluff, wife of the bankrupt, for an order requiring the trustees in bankruptcy to deliver to her a policy of life insurance. See 105 Fed. 502.

William L. Marbury, for petitioner.
George R. Willis and Randolph Barton, for trustees.

MORRIS, District Judge. Among the assets returned by Horace Slingluff in his schedule, and now in the possession of the trustees,

is a tontine investment policy in the New York Life Insurance Company. This policy (No. 166,465) is for $5,000, upon the life of Horace Slingluff, and is dated December 29, 1882. The company by this contract agrees that, upon the payment of $246.10 on the 29th day of December in each year for 20 years, it will pay the said insurance to Horace Slingluff, or his legal representatives, if he survives the twenty years, or, if he dies within the 20 years, then to his wife, or her legal representatives. The premiums have been paid by Mr. Slingluff for 18 years, and, if he lives, two more premiums will be payable,—one on December 29, 1900, and one on December 29, 1901, of $246.10 each. The policy contains the conditions and provisions usual in life insurance contracts with regard to the payment of premiums, limit of travel and residence, occupation and employment, and proofs of death. It was specially stipulated that, in consideration of the policy being issued on the tontine investment plan, any claim arising under statute or otherwise to a paid-up policy or surrender value, or to any temporary insurance, was expressly waived. And it was also expressly agreed that the policy was accepted by the assured upon the conditions of the company's investment tontine plan, by which no dividend was to be allowed on the policy unless the person whose life was insured should survive the tontine period of 20 years, and then the surplus derived from the same class of policies should be equitably apportioned among the policies of the same class completing their tontine dividend periods, and it was agreed that previous to the completion of its tontine dividend period the policy should have no surrender value in cash or in a paid-up policy. It was provided that assignments must be made in duplicate, and both copies sent to the home office for acknowledgment, one of them to be retained by the company; that upon the completion of the tontine period, which it was agreed should be completed on December 29, 1902, the legal holder of the policy should be, upon certain notice as to his choice, entitled, at his option, in substance, either to withdraw the whole $5,000, together with the surplus apportioned to the policy, or to convert the whole proceeds into a paid-up policy, or into a life annuity upon the life of the person insured. It is conceded that the proceeds of the policy, if in force on December 29, 1902, less than three years from the date of the application in bankruptcy (that is to say, the amount insured, with its proportion of the surplus), will amount to about $7,000. The policy was in the possession of the bankrupt at the date of his petition in bankruptcy, January 30, 1900, and was returned by him in his schedule of assets, and was delivered by him to the trustees. The wife of the bankrupt on July 7, 1900, petitioned the court to direct the trustees to surrender the policy to her, upon the ground that it had no surrender value to said bankrupt, and did not pass to his trustees, and that as the sum insured is payable to the petitioner in the event of the death of her husband at any time before December 29, 1902, she is entitled to have the policy in her possession. The trustees oppose the granting of the prayer of the petition, claiming that the policy passed to them by operation of law; that it has now, and had at the time of the filing of his petition by

said bankrupt, a large salable value; and they state that it will not delay the closing of the estate if they should hold the policy until the endowment period matures.

The questions raised by this petition are important and of quite frequent occurrence. First, it is to be considered whether a policy of this character passes to the trustee in bankruptcy under the provisions of the act. The policy has a large actual value, but by its terms it has no surrender value. One of the features of the tontine plan, under which it is issued, is that only the survivors of the tontine period shall reap the profits arising from the lapses. If, therefore, as is contended on behalf of the petitioner, under the bankrupt law only those policies pass to the trustees in bankruptcy for which the insurance company has contracted or is willing to pay a price for surrender, then there is an end to the present controversy. Section 70a of the bankrupt act of 1898 provides:

"The trustee * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date he is adjudged a bankrupt, except in so far as it is to property which is exempt, to all documents relating to his properties; * * * (5) property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

It is clear, I think, that a contract with an insurance company which the bankrupt could have assigned to a person competent to accept an assignment is a contract which the bankrupt could have transferred, within the meaning of this provision of the bankrupt act. And I think it is clear that this policy, and the benefits to be derived by the bankrupt by virtue of it, was by its terms recognized by the insurance company as an assignable contract. The policy in terms provides that it may be assigned, and provides that the benefits shall be secured to the legal holder. And I think it is clear that a contract which entitles the bankrupt or his assignee to have the sum agreed upon paid to him in the event of his surviving until a certain date is property. Bassett v. Parsons, 140 Mass. 169, 3 N. E. 547; Brigham v. Insurance Co. 131 Mass. 319; Insurance Co. v. Armstrong, 117 U. S. 591–597, 6 Sup. Ct. 877, 29 L. Ed. 997; Insurance Co. v. Flack, 3 Md. 341. A possibility coupled with an interest passes to the trustee in bankruptcy. Williams v. Heard, 140 U. S. 529–538, 11 Sup. Ct. 885, 35 L. Ed. 550. In Warnock v. Davis, 104 U. S. 775–781, 26 L. Ed. 924, it is said to be the law of New York that a policy of life insurance is assignable like an ordinary chose in action, and that the assignees are entitled to the full sum payable, without regard to the consideration paid, or any insurable interests in the life of the assured. This policy, by its terms, provides that it shall be construed only according to the laws of New York. And in Maryland it is held that, a policy being a chose in action for the payment of money, the assured may make a valid assignment of a policy on his own life to one who has no insurable interest therein. Rittler v. Smith, 70 Md. 261–265, 16 Atl. 890, 2 L. R. A. 844. I think it follows that the bankrupt's interest in this policy was property which prior to the filing of the petition he could have transferred, and that unless prevented by the

proviso to section 70, or by its peculiar nature as a contract of life insurance, it vests by operation of law in the trustees. After the provision above quoted from section 70a, stating what property shall pass to the trustee of the bankrupt, there is added a proviso for the benefit of the bankrupt in respect to a certain class of insurance policies, as follows:

"Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives, he may, within 30 days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated and continue to hold, own and carry such policy free from the claims of creditors, participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

It is urged that this proviso is not, as upon first impression it would seem to be, merely a privilege given to a bankrupt to rescue a certain class of insurance policies from the general vesting of the title by operation of law in the trustee, but that it is an exclusive definition of what class of policies vest in the trustee, and that its meaning is that no policies of insurance pass to the trustee except those which have a surrender value, and which the bankrupt has failed to redeem by paying or securing to the trustee such ascertained surrender value. This, it seems to me, is to convert what was added by way of proviso and exception to the general provision for the passing of all property which the bankrupt could by any means have transferred into an affirmative, exclusive statement, so far as concerns insurance policies, of what should pass. I can see no reason for this unnatural and unusual construction. There is no reason to conclude from any expression in the bankruptcy act that it was the intention to allow the bankrupt to retain from his creditors anything (except the exemptions prescribed by the law of the state) which he could transfer, and from which they could derive pecuniary benefit, even though the ultimate benefit depended on a contingency. In the present case the policy is a contract by which the bankrupt, or his assigns, if he lives until December 29, 1902 (that is to say, in less than three years from the date of the adjudication), will receive $7,000, provided there is paid in the meantime two yearly premiums of $246.10 each. The bankrupt is a man in middle life, and his expectancy of life is easily ascertainable. It is true, the contract expressly states that nothing shall be paid by way of anticipation until the maturity of the contract. But this does not destroy the actual pecuniary value of the contract to any person entitled to take and hold it until maturity. It is in this particular case shown that a purchaser, for a considerable sum, is now ready to take an assignment of the policy; and the trustees also show that even if they have to await the maturity of the policy, it will not delay the final settlement of the estate, as there are complicated real-estate interests which will require time to reduce to money. It is to be considered that endowment policies have two features. One is the ordinary life insurance, by which a sum is to be paid to the beneficiary if the life insured terminates before the maturity of the endowment period. The beneficiary, therefore, is

only interested in the policy in case of the death of the assured before the endowment matures. The other is the endowment feature, by which the company, in consideration of an increased premium, agrees to pay to the person on whose life the insurance is granted, or to the legal holder of the policy, the money called for by the policy, if the assured is living at a named date. The endowment feature is obviously in the nature of a savings fund, in which the assured and his assigns are interested, but the beneficiary is not. So far as the assured is concerned, the endowment feature is the accumulating, by depositing with the company the annual premiums, of a sum to be repaid to him in his lifetime if he survives the endowment period. In Evers v. Association, 59 Mo. 429, it was held that there was no joint interest in such a policy between the assured and the beneficiary, but that it belonged to the assured alone while he lived, because if he survived the endowment period the whole proceeds would be paid to him, and the interest of the beneficiaries did not attach except in the contingency of his dying within the period. To similar effect are Tennes v. Insurance Co., 26 Minn. 271, 3 N. W. 346; Talcott v. Field (Neb.) 52 N. W. 400; Levy v. Van Hagen, 69 Ala. 17; Tompkins v. Levy, 87 Ala. 263, 6 South. 346; 2 May, Ins. § 459d. An interesting discussion of the law of "Endowment Life Insurance Policies Carried by Insolvent Debtors," by Lucius Weinschenk, published in August, 1900, by the Boston Literary Bureau, has furnished me some of the foregoing citations.

It is, I think, apparent that such a policy may have no surrender value, and yet have a very large actual value, which can be secured to the bankrupt's creditors without in any manner affecting the contingent interest which it was contemplated should be secured to the beneficiaries. There would seem to be no reason why the deposits in a life insurance company to secure a sum payable to the assured at a given date, if he should be then alive, should be treated differently from a similar contract with a savings bank or building association. It is quite true, as has been urged in argument, that public policy forbids pure wagering policies on the life of a person in whose life the beneficiary has no insurable interest. Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924. But this has no application to creditors of the assured to the extent of their claims. Cammack v. Lewis, 15 Wall. 643, 21 L. Ed. 244. It may be that, if the whole sum secured by the policy should be collected by the trustee, only the proportion thereof ascertained to have been equitably to the credit of the policy at the date of the adjudication, with the outlay for premiums, would be allowed to be retained by the trustee. But the question of whether the trustee would be entitled to the whole proceeds or not is not at all necessary to be considered now in this case; for, if necessary to be ascertained, there are, I think, settled principles upon which an actuary could determine the amount to which the policy was entitled equitably at any stated date. It would, therefore, seem that the test by which to determine whether a trustee shall retain such a policy or shall deliver it to the beneficiary is not whether the policy has a cash surrender value, in the sense that by its terms or by practice a cash payment can be obtained from the company for its surrender, but

whether or not it has an actual value which will be of benefit to the bankrupt's creditors. If the policy is a "paid-up" endowment policy, by which a sum is made payable to the bankrupt at a fixed date, all that the trustee would need to do would be to hold the policy until maturity, or, if the bankrupt died before maturity, then to hand it to the beneficiary. If it is a policy requiring further payments of premium, then, if the payments are guarantied by the creditors, or the assets are sufficient to pay them, it is for the trustee to consider whether or not it will be a benefit to the estate to keep the policy alive, and to obtain the sanction of the court to either retain or disclaim it. It is always at the option of a trustee of a bankrupt to refuse to accept a transfer of property or of contracts which would be a burden to the estate. It seems, therefore, that where the policy passes by operation of law to the trustee, and the privilege given by the proviso to section 70 of the act is not availed of by the bankrupt, the duty devolves upon the trustee, having regard to the recommendation of the creditors, the probable value of the policy, and all the circumstances of the case, to apply to the court for direction as to whether he shall retain the policy and keep it alive, or shall surrender it to the bankrupt or other person interested in it. This practical dealing with an insurance policy, as with any other asset of the bankrupt, has the merit of preventing the sacrifice of a policy not valuable enough to be continued by the creditors, and yet of some value to the bankrupt or his family, and, on the other hand, it prevents the creditors from being deprived of the policy in case the bankrupt's interest in it is of value to the creditors. Cases may quite possibly occur in which it would be grossly inequitable that endowment policies paid for out of the bankrupt's assets for large sums just about to mature should pass to the bankrupt, and his creditors realize nothing from their value.

In Morris v. Dodd (a case decided by the supreme court of Georgia, April 11, 1900) 36 S. E. 83, the bankrupt held a policy on his life, payable to his legal representatives, which just before his petition in voluntary bankruptcy he assigned to his wife. Six months after the assignment, but pending bankruptcy proceedings, the bankrupt died, and the trustee entered suit to set aside the transfer to the wife as fraudulent against creditors. The evidence submitted satisfied the court that neither at the time of the transfer nor of the filing of the petition in bankruptcy did the policy have any cash surrender value, and it was held that, if the policy had no surrender value, it would not have vested in the trustee, even if it had not been transferred to the wife. The case was, no doubt, rightly decided, as it was established by the testimony that at the time of the transfer to the wife the bankrupt did not part with anything which was then of value to his creditors, the loss of which operated as a fraud upon their rights. The court, however, in its opinion, goes further, and lays down a rule which, I venture to think, is not applicable to endowment policies calling for the payment of a sum to the bankrupt himself at a given date, if then living. Barbour v. Insurance Co., 61 Conn. 240, 23 Atl. 154; Bank v. Hume, 128 U. S. 195–204, 9 Sup. Ct. 41, 32 L. Ed. 370. Such a policy, which has been kept up for

a number of years, or is fully paid up, has to its credit an ascertainable portion of the sum ultimately payable; and it would seem that the creditors ought not to be deprived of the chance of obtaining the benefit of this contract, if it can be worked out without injustice to any one. The fact that the endowment is by the policy made payable to the bankrupt, and not to his wife or other beneficiary, is his own act, and no one can complain that his creditors benefit by its having been so made. The present value of such a contract depends upon the nearness of the day for its performance. Barbour v. Insurance Co., 61 Conn. 240–248, 23 Atl. 154. And that present value, at least, his creditors are entitled to, if by any reasonable means that value can be made available for the payment of debts. In the case now in hand the contract is the result of outlay by the debtor, and if he had not petitioned in bankruptcy, and should live about three years from the date of his petition, and should pay the two insignificant annual premiums, he would have $7,000 paid to him for his own benefit, which his creditors would be entitled to have applied to the payment of their debts if he had not petitioned. To deny them all right to that fund is to withdraw from them something which they had a right to look to, without giving them anything in return, and it is giving to the bankrupt for his own benefit a large gratuity, for which he surrenders nothing to the creditors. If, as I think, section 70a operates to transfer and vest the title to the policy in the trustee, there can be no difficulty in the trustee holding it. Creditors have an insurable interest in the life of their debtor. Cammack v. Lewis, 15 Wall. 643, 21 L. Ed. 244. And, as the trustee represents the creditors, there can be no difficulty in sustaining his insurable interest, so long as the debts are unpaid, even though by operation of the bankrupt law the bankrupt has been discharged from personal liability. Insurance Co. v. Schaefer, 94 U. S. 457–460, 24 L. Ed. 251.

It remains to examine some of the cases which have been brought to my attention. In re Buelow (D. C.) 98 Fed. 86–89, the court states that the life insurance policies had no cash surrender value, and no value for any purpose, except as they might become valuable at the time of the death of the husband, provided the premiums were kept paid, and it was ordered that the trustee deliver the policies to the petitioners. This was obviously a case in which the policies would have been a burden to the estate. The cases of In re Lange (D. C.) 91 Fed. 361, and In re Steele (D. C.) 98 Fed. 78, reversed by the circuit court of appeals for the Eighth circuit (opinion by Circuit Judge Caldwell, filed Nov. 12, 1900, 104 Fed. 968), had to do with the question whether the proviso to section 70 should be held to override the general provision exempting property declared to be exempt by the state law; but this case is not affected by that question, as the Maryland law exempts from claims of creditors only policies taken out for the benefit of the wife or children or dependent relative or a creditor, or bona fide assigned for their benefit. Code Md. art. 45, §§ 8–10; Emerick v. Coakley, 35 Md. 188; Elliott v. Bryan, 64 Md. 368, 1 Atl. 614; Earnshaw v. Stewart, 64 Md. 513, 2 Atl. 734. In re Diack, 3 Am. Bankr. R. 723, 2 Nat. Bankr. N. 664,

100 Fed. 770, the policy was an endowment policy of the same character as the one now before me, except that it had a surrender value, a portion of which represented the interest of the bankrupt in the policy, and the remaining portion the interest of his wife. As the trustee could not require the wife to accept a paid-up policy or to surrender, Judge Brown required the bankrupt to execute an assignment to the trustee of his interest in the surrender value, and directed that the bankrupt's interest in that sum should be payable out of the policy when it matured, or whenever sooner paid.  This, it seems to me, was dealing with the policy as I think should be done in the present case; that is to say, a practical and just plan was adopted to preserve the respective rights of the creditors and the beneficiary in a valuable asset.  In Re Boardman, 2 Nat. Bankr. N. 821, 103 Fed. 783, the policy was an endowment policy payable to the bankrupt at a fixed date if living, and, if he died before that date, then to his mother.  It had no technical surrender value by contract, but the insurance company was willing to pay a cash sum for its surrender.  Judge Lowell held that the policy passed to the trustee.  The note to In re Hernich, 1 Am. Bankr. R. 713, stating that the referee's report was approved by me, does not express the actual fact.  That case arose upon the application of the bankrupt for his discharge, and the question considered by the referee was whether or not the bankrupt had made a false oath in swearing to a schedule of his property without including therein the policy of insurance. The referee's report stated that the bankrupt had not made a false oath, giving his reasons for his report, and the court granted the discharge.  The only matter upon which the court passed was that the bankrupt was entitled to his discharge.  The fact was that the policy in that case had a surrender value of less than $200, which the Massachusetts Insurance Company refused to pay without the wife's release, and it appeared to be a policy which it would have been a burden either to carry, or to expend the cost of any attempt by suing for the surrender value to test the right of the insurance company to refuse to pay without the wife's release.  There was, therefore, nothing to be gained by requiring the bankrupt in that case to assign his interest in the policy to the trustee, and neither the trustee nor any creditor petitioned the court to so order.

The prayer of the petition in the present case is denied, and the petition dismissed.