CLARK v. EQUITABLE LIFE ASSUR. SOC.

(Circuit Court, E. D. Pennsylvania. January 30, 1906.)

No. 57.

1. INSURANCE—SALE AND TRANSFER OF LIFE POLICY.

An insured in a life policy, who for a valuable consideration sells and duly assigns the policy, is thereby estopped as against the company issuing the same to attack the validity of the assignment on the ground that the assignee had no insurable interest in his life.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 481, 482.]

2. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICIES.

Policies of life insurance of a bankrupt having an actual value pass to his trustee, and the bankrupt is devested of all interests therein, unless he retains the same under the proviso to Bankr. Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], by paying the cash surrender value.

At Law. On motion by defendant for judgment notwithstanding the verdict.

See 133 Fed. 816.

Albert B. Weimer, for plaintiff.

Thomas De Witt Cuyler and Burr, Brown & Lloyd, for defendant.

J. B. McPHERSON, District Judge. The question for decision arises upon the following facts: In September, 1893, the plaintiff was the owner of an endowment policy of life insurance for $10,000, issued by the defendant company and payable with accumulated dividends to himself, his executors, administrators, or assigns on October 20, 1903. In case of his death before that date, the policy without dividends was payable to his wife, her executors, administrators, or assigns. The plaintiff desired to raise $1,000 for a business venture, and for this purpose applied to a man named Welliver, who lived in Philadelphia and bought life insurance policies or negotiated loans on their security. Welliver presented the proposition to Herzfelt, who was then, and has been ever since, a resident of New York City, and Herzfelt agreed to buy the policy for $1,650. He had no insurable interest in the plaintiff's life. Accordingly several papers were prepared, by which the policy was assigned absolutely to Herzfelt, and these papers were brought to Philadelphia by Welliver and were executed here by Clark and his wife. They were then taken to New York by Welliver, who delivered them to Herzfelt and received from him $1,650, of which $1,000 was paid to Clark in Philadelphia and was receipted for by him as "purchase price in full, less commission to him [that is, Welliver], for Equitable Life policy No. 266,627, on the life of Charles E. Clark." Thereafter the premiums were kept up by Herzfelt, and in April, 1903, the defendant company paid to him $10,000, less the discount for the period still to elapse before the policy should mature. Shortly before October 10th the plaintiff, claiming that the transaction with Herzfelt had not been a sale of the policy, but a mere pledge as collateral security for a loan of $1,000,

notified the defendant not to pay any more money, and brought a suit in New York, which, however, was afterwards discontinued. The defendant then paid to Herzfelt the accumulated dividends, taking from him a refunding bond as security, and not long afterwards the present suit was brought. The jury found specially that the plaintiff had sold the policy out and out.

In my opinion, there are two reasons why the plaintiff is not entitled to recover. His case rests wholly upon Herzfelt's lack of insurable interest. If the assignment is to be treated as a New York contract—and it contains an express clause to that effect—there is no doubt that it passed an indefeasible title to the whole sum secured by the policy. On the other hand, the Pennsylvania rule would permit Herzfelt to retain only so much as would reimburse him for the money expended with interest thereon, and the formal verdict for the plaintiff is for the balance that would thus be found in his hands. What the rule in the federal courts is may perhaps admit of question, but, even upon the assumption that the Pennsylvania doctrine should be applied, there remain the two objections to which I have referred. The first is based upon the estoppel founded upon the assignment itself. I had occasion to consider this subject several years ago in Hettinger v. United Brethren Mutual Aid Society, 1 Del. Co. R. 466, 4 York Leg. Rec. 39, a case on all fours with the present controversy, and I may be permitted to repeat a portion of the opinion then delivered, as still expressing my views on this question:

"To state the case in other words, having willingly, and for a consideration, transferred the legal title to these policies and clothed the assignees with at least an apparent right to their proceeds, by virtue of which right and title they obtained from the society the money it had agreed to pay, he now asks a court to declare his contract void, not only as against the assignees, but against the society as well, and to say that the latter was not justified in relying upon his contract under seal because he afterwards gave notice that he did not intend to stand by it. To succeed in such a claim, the plaintiff must call to his aid some rule of public policy or some rigid rule of law.

"We have not been referred to any rule of law which compels us to declare the assignments void, and we are of opinion that the plaintiff cannot in this suit ask us to apply the rule of public policy which forbids wagering insurance on human life. It would not be proper to say what the result of applying that rule would be if the plaintiff had proceeded against the assignees, and we do not intimate any opinion on the questions which might then arise; but it seems clear to us that the plaintiff is estopped from invoking the aid of the rule in this suit against the society. The case is analogous to that class, in which the question arises, which of two innocent persons must suffer, and the answer there is plain that, as between such persons, the loss must fall upon him whose act enables the injury to be done. Garrard v. Haddan, 17 Sm. 85. The difference is against the plaintiff, for here he did not innocently cause the injury of which he complains, but with full knowledge of the fact, which he now urges as making his assignments void, viz., the assignees' want of insurable interest, he nevertheless transferred the policies to them and thereby shared in causing the society to pay them the money. In effect, he sent them to the society with his authority under seal to take his place, pay his dues, and receive the proceeds of the policies; and, surely, since the genuineness of the authority is not denied, he cannot be allowed to complain because the society has exactly carried out its provisions.

"If these principles are sound, the plaintiff's notice of July 19, 1877, did not better his position. The assignments were genuine, and had not been

obtained by fraud, and his notice was a mere declaration that he intended to repudiate them, which the society, if it saw proper, might disregard. Other questions might arise, if the assignments had been spurious, and notice of that fact had been given before payment."

I have nothing to add to this language. If it correctly states the law, the plaintiff has sued the wrong defendant. See, also, Insurance Co. v. Hennessy, 99 Fed. 64, 39 C. C. A. 625, and Widaman v. Hubbard (C. C. ) 88 Fed. 812.

But there is a second objection, which I think is equally fatal to the plaintiff's right. On August 15, 1900, he was adjudged a bankrupt in this court, and shortly thereafter a trustee of his estate was duly appointed and qualified. Under section 70a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 565, 566 [U. S. Comp. St. 1901, p. 3451]) the trustee thereupon became vested, as of the date of the adjudication, with the bankrupt's title to all "(5) property which, prior to the filing of the petition, he could by any means have transferred, or which might have been levied upon and sold under judicial process against him," and this language undoubtedly includes whatever equity the bankrupt may have had in this policy. The proviso to clause 5 does not affect this conclusion. It is as follows:

"Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

The policy in question was a tontine policy and probably has no cash surrender value, but, even if it had, the bankrupt never availed himself of the privilege given by the proviso, and the policy therefore passed to the trustee as assets of the estate. That policies of life insurance such as this, having an actual value, pass to the trustee, has been directly decided by several of the federal courts. The subject is elaborately discussed by Judge Morris in Re Slingluff (D. C.) 106 Fed. 154, and by Judge Jenkins in the Circuit Court of Appeals for the Seventh Circuit in Re Welling, 113 Fed. 189, 51 C. C. A. 151. See, also, In re Holden, 113 Fed. 141, 51 C. C. A. 97.

For either, or for both of the foregoing reasons, I think that the plaintiff's claim cannot be supported, and that the defendant is entitled to judgment upon the reserved point, notwithstanding the verdict.