8567

SANDERS v. ÆTNA LIFE INSURANCE CO.

1. BANKRUPTCY—INSURANCE.—An insurance policy on the life of a bankrupt, which has no cash surrender value and for which the insurer would have paid no money, at the time of adjudication of bankruptcy or prior to death of insured, which occurred while settlement of the bankrupt estate was pending and before discharge, does not pass to the trustee by operation of law.

2. IBID.—IBID.—Where in such policy the power is given the insured to change the beneficiary without his consent, such power does not pass to the trustee.

Mr. Justice Woods *dissents.*

3. IBID.—IBID.—Nor do the proceeds of such policy belong to the trustee because the wife was adjudged a bankrupt as a partner with the insured, where she was discharged before the death of the husband bankrupt.

Before MEMMINGER, J., Greenwood, ————, 1912. Affirmed.

Two cases, Marshall F. Sanders *et al.* against Ætna Life Insurance Co., and S. H. McGhee and Mrs. Anna Belle French *et al.* against same. Defendants appeal.

*Messrs. Giles & Ouzts* and *C. C. Featherstone,* for appellants.

*Mr. Featherstone* cites: *The trustee by operation of law is vested with the powers the bankrupt could have exercised for his own benefit:* 86 S. C. 1; 69 C. C. A. 496; 51 C. C. A. 97; 1 Loveland 818, 821; 205 U. S. 51; 182 Fed. R. 716; 51 C. C. A. 151; sec. 70a of Bankrupt Act; 106 Fed R. 154; 157 Fed. R. 544; 169 Fed. 1019; 175 Fed. 65; 186 Fed. 537; 182 Fed. 716, 949; 191 Fed. 325; 185 Fed. 98; 175 Fed. 65; 178 Fed. 632; 188 Fed. 702; 165 Fed. 984. *Sec. 1824 of Code of 1902 should not be applied to prevent the trustee from acquiring the property:* 62 Am. St. R. 878; 77 S. C. 299; 87 S. C. 399.

*Messrs. Grier, Park & Nicholson,* contra, cite: *Policy without a cash surrender value does not pass to the trustee:* 49 Law Ed. 1018; 51 Law Ed. 771; 44 C. C. A. 223, 287; 78 Am. St. R. 129; 104 C. C. A. 227; 113 C. C. A. 158. *Policies specially exempt by the act:* 140 Fed. 138; 113 C. C. A. 158. *First beneficiary could only be deprived of vested right by change of beneficiary:* 77 S. C. 300; 2 May on Ins., sec. 399; 128 U. S. 195; 49 L. R. A. 737; 87 S. C. 395; 86 S. C. 1.

May 30, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action on two policies of insurance, by the beneficiaries therein named.

His Honor, the Circuit Judge, rendered judgment in their favor, and the defendant appealed.

It appears from the agreed statement of facts, upon which the case was heard in the Circuit Court, that M. F. Sanders and Bessie W. Sanders, his wife, were copartners in trade, as M. F. Sanders & Company, and both as partners and as individuals, were adjudged bankrupts on the 30th of June, 1911, in pursuance of a petition filed on the 26th of June, 1911. That M. F. Sanders informed the trustee that he had certain policies of insurance on his life, which were in the Bank of Greenwood, where they could be seen by him. That the trustee said he would take the matter up, some other time. That the said policies were never scheduled by the bankrupts. That M. F. Sanders carried the policies to his attorney, who advised him that they had no cash surrender value, and that he should communicate this fact to the referee and trustee, which he did. On the 1st of November, 1911, Bessie W. Sanders was discharged as a bankrupt, but M. F. Sanders was never discharged. On the 12th of January, 1912, M. F. Sanders committed suicide, and left surviving him his wife and three children, who are plaintiffs in this action. On the 22d of November, 1911, upon the application of M. F. Sanders, the beneficiaries in the two policies were changed in favor of his three children. The policies provided that the insured should have the right to change the beneficiary without his or her consent. In the application for the change of beneficiary, M. F. Sanders made this statement: "I am not now adjudged insolvent, nor have I made a general assignment, for the benefit of creditors, that remain unsatisfied." The two policies were originally payable to Bessie W. Sanders, if she survived the insured, otherwise, to his executors, administrators or assigns. "Neither of the policies had any cash surrender value, prior to the death

of the insured, and no loan value, until the end of the third premium year, to wit: 29th of July, 1912, nor until the payment of the third premium of 29th of July, 1912; and the company would have paid no money, prior to or at the date of the adjudication in bankruptcy, or prior to Sanders' death. The cash surrender value of neither of said policies has been ascertained, and stated to the trustee, by the company issuing the same, and the trustee made no effort to ascertain the same from the company, or to communicate the same to M. F. Sanders or Bessie W. Sanders." The bankrupt estate has never been settled.

The question to be determined, is, whether the policies were vested in the trustee by operation of law, when, it is admitted, that at the time M. F. Sanders & Bessie W. Sanders were adjudged to be bankrupts, the said policies had no cash surrender value, and the company would have paid no money therefor, prior to the date of the adjudication in bankruptcy, or prior to Sanders' death.

Section 70a of the bankrupt act is as follows:

"The trustee of the estate of a bankrupt, upon his appointment and qualification * * * shall be vested by operation of law, with the title of the bankrupt, as of the day he was adjudged a bankrupt, except in so far as it is to property, which is exempt to all (1) documents relating to his property, * * * (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person, (4) property transferred by him in fraud of his creditors, (5) property which prior to the filing of the petition, he could, by any means, have transferred, or which might have been levied upon and sold, under judicial process levied against him: *Provided,* That when any bankrupt shall have any insurance policy, which has a cash surrender value, payable to himself, his estate or personal representative, he may within thirty days, after the cash surrender value has been ascer-

tained and stated to the trustee, by the company issuing the same, pay or secure to the trustee, the sum so ascertained and stated, and continue to hold, own and carry such policy, free from the claims of the creditors, participating in the distribution of his estate under the bankruptcy proceedings, otherwise, the policy shall pass to the trustee, as assets."

The *proviso* in section 70*a* when analyzed, shows, 1st, that the said section had in contemplation policies that had some cash surrender value, at the time the insured was adjudged a bankrupt; 2d, that when such value has been ascertained and stated to the trustee, by the company issuing the policy, the bankrupt may pay or secure to the trustee the sum so ascertained; 3d, that the payment must be made or security given to the trustee, within thirty days after said value has been ascertained; 4th, that upon complying with these requirements, the bankrupt shall continue to hold and own such policy, free from the claims of creditors; and 5th, that if the bankrupt complies with said requirements, the policy shall not pass to the trustee, as assets.

In order to place a proper construction on said section, we naturally endeavor to ascertain the object, which it was the intention of Congress to accomplish.

It will be observed that policies of insurance are placed upon a different footing, from all other property vested in the trustee; and that it was not intended that the policies, but only their cash surrender value should become assets, unless the insured failed or refused to comply with certain prescribed conditions.

It is true, the *proviso* contemplates a benefit to the bankrupt estate, and, when the policies have a cash surrender value, they are vested in the trustee by operation of law, in order that said value may be added to the assets. But the main object was to enable the bankrupt, to hold and own the policy free from the claims of his existing creditors; and the only effect of holding that the title to the policies was vested in the trustee, even when they were without

cash surrender value, would be to defeat the principal aim of the statute, without increasing the assets. The law never intends that an act should be done, when its effect would be wholly nugatory.

If it had been ascertained that the policies had a cash surrender value of one hundred dollars, and the insured had paid that sum, the trustee would no longer have any interest in them. Do the admitted facts show that the bankrupt forfeited his right to pay the cash surrender value, and to continue to hold the policies? Let us consider the bankrupt's rights, in view of the fact that the cash surrender of the policies has not been ascertained and stated to the trustee, by the company issuing the same. It is admitted that the trustee made no effort to ascertain the same from the company, or to communicate the same to M. F. Sanders or Bessie W. Sanders; that M. F. Sanders notified both the referee and the trustee of the existence of the policies, and that he and his attorney regarded them as having no cash surrender value; that the trustee said he would take them up at some other time; that the bankrupt died on the 12th of January, 1912, and that the bankrupt estate has not been settled. The only inference to be drawn from these facts is, that if the bankrupt were alive he would still have the right to pay the cash surrender value of the policies, and hold them free from his existing creditors, upon complying with the requirements of said section; but, that, as he is dead, this privilege could be exercised by the representative of his estate. *In re Judson,* 113 C. C. A. 158.

Under our interpretation of the said section, this, however, is an immaterial question, as the fact that the policies had no cash surrender value, shows that the title to them did not become vested in the trustee—there being no failure to perform a condition where the nonperformance thereof, would have caused the title to the policies to become assets of the bankrupt estate.

In the case of *Hiscock* v. *Mertens*, 205 U. S. 202, the Court had under consideration the question, whether the cash surrender value of a policy of insurance under section 70a of the bankruptcy act, must be provided for, in the policy, or whether it is sufficient if the policy have such value, by the concession or practice of the company. In discussing this question, the Court thus states the object of the foregoing provision: "It was an actual benefit, for which the statute provided, and not the manner in which it should be evidenced. * * * What possible difference could it make, whether the surrender value was stipulated in a policy, or universally recognized by the companies. In either case, the purpose of the act would be subserved, which was to secure to the trustee the sum of such value, and to enable the bankrupt to continue to hold, own and carry, such policy free from the claims of the creditors, participating in the distribution of the estate, under the bankruptcy proceedings."

The statute is thus explained in the case of *Morris* v. *Dodd*, 110 Ga. 606, 78 Am. St. Rep. 129, 50 L. R. A. 33:

"The purpose of the bankruptcy act, is to take the property owned by the bankrupt when the petition is filed, and apply it toward the payment of his then existing debts, discharging him in due course from any further liability, his after acquired property not being subject to such debts. This being true, it is apparent that the creditors represented by the trustee, whose debts cannot continue against the bankrupt, can have no insurable interest in his life for the purpose of indemnifying themselves against loss. In view, therefore, of the authorities cited and the language of the act itself, it seems that a policy of insurance on the life of a bankrupt, though payable to his legal representatives, does not vest in the trustee as assets of the bankrupt's estate, if the policy has no cash surrender value."

To the same effect is the case of *In re Judson,* 113 C. C. A. 158, in which the Court says: "We think that the statute

in question clearly indicates an intention upon the part of
Congress to permit bankrupts to retain the advantages of
existing life insurance policies, provided they will pay to
their trustees all that could be obtained by surrendering
such policies at the commencement of the proceedings.    In
the case of policies having a cash surrender value the pro-
viso covers the case.    In the case of policies having no cash
surrender value the proviso does not apply expressly, but
reading it in connection with the other provisions, we think
that such policies are not 'property,' within the meaning of
the statute, but are in the nature of personal rights.    True
they are 'property' within technical definitions of the term.
But they represent nothing more than the right to pay future
premiums at a fixed rate.    Their value is altogether specu-
lative, and in our opinion, it was not the intention of Con-
gress that bankrupts should be deprived of their policies,
to enable trustees of bankrupt estates to use their funds
to speculate with."

The first and second propositions upon which the appel-
lant's rely are : 1. "That the bankrupt (the insured) had a
'power which he might have exercised for his own benefit,'
viz. : the power to change the beneficiary, and that
2    that power passed to the trustee.    2. That the power
to change the beneficiary was property, within the
meaning of the act, which he could have transferred or
assigned, and that that right passed to the trustee."

These propositions are unsound, for the reason they
presuppose, that the policies were vested in the trustee,
which we have shown is not the fact.

The third proposition is as follows : "That Mrs. Sanders,
the beneficiary, being also a bankrupt, and the
3    insured having died before the estate was wound
up, the fund belongs to the trustee."

In the first place, the value of Bessie W. Sanders' interest
in the policies, as an asset in the hands of the trustee, must
be determined, with reference to the filing of the petition,

and not, as contended, at the time her husband died. And in the second place, whatever interest she may have had, at that time, was subject to be defeated by the action of the insured in changing the beneficiary, which was actually done. The appellant, however, contends, that the statements upon which the change was made, were false. If there was fraud in this respect, it did not affect the rights of the trustee, and he has no cause to complain. *Morris* v. *Dodd,* 110 Ga. 606, 78 Am. St. Rep. 129, 50 L. R. A. 33.

Judgment affirmed.

MR. JUSTICE HYDRICK *concurs.*

MR. JUSTICE WATTS *disqualified.*

MR. JUSTICE FRASER, *concurring.* I concur with the Chief Justice for the reason that the statute provides that the trustee in bankruptcy shall take "(3) powers which he (the bankrupt) might have exercised for his own benefit but *not those which he might have exercised for some other person."* It is beyond question that the bankrupt might have exercised this right for some other person. He did. The rule of statutory construction is that where there is a conflict between two provisions of a statute, the last shall govern as the last expression of the legislative will. So it seems to me that where circumstances throw a case under the last clause, then the last clause must govern. Inasmuch as the statute distinctly says that the power which he might have exercised for some other person shall *not* go to the trustee, the Courts have no right to award these policies to the trustee. If we do, we violate the terms of the act. If Congress had intended to confine the exemption to those powers that the bankrupt might have exercised exclusively for others, it was easy to have said so. The proviso to item (6) treats of policies payable to the bankrupt or to his estate and made no other provision as

though it had exhausted the subject. It is difficult to see how a policy that has no cash surrender value and not payable to the bankrupt or his estate, passes to the trustee. The intention is to save the insurance, not to destroy it. Item (5) does not control item (3), however, as item (3) is a special provision and item (5) is a general provision.

*State ex rel. Lyon* v. *Bowden,* 92 S. C., pg. 401: "But even if the two provisions were inconsistent no principle of construction is better settled, both by authority and reason, than this: Where, in a legislative enactment, a special provision is made as to a subject which would otherwise be embraced in a general provision on the same subject the special provision is held to be an exception, and not intended to be embraced in the general provision."

Whatever we may now think of the propriety of allowing a debtor to take money that ought to go to his creditors and with it buy life insurance for the benefit of his family, and allow the family to collect and enjoy the proceeds of the policy to the entire exclusion of the creditors, even from that portion represented by the premiums paid. still the law is too well settled to doubt its existence or escape its consequences except by statutory enactment. Here the enactment is the other way.

Again the trustee must take the required steps to change the beneficiary before he can claim the proceeds of the policy.

In *Deal* v. *Deal,* 87 S. C., pg. 395, it was held that a strict compliance with the terms of the policy are necessary before a change in the beneficiary can be enforced. Here there was no effort to change the beneficiary during the life of the insured, and now that the rights of the beneficiaries have become absolute by the death of the insured, the trustee asks that without a change of beneficiary, even now, the proceeds be paid to him, and I do not think it can be done. Under the law of South Carolina these policies are payable to the beneficiaries named in the policies, and

I do not see that the Federal statute is in conflict. If these policies had cash surrender value, say one hundred and fifty, dollars, the trustee would have been entitled to the one hundred and fifty dollars, but as they had no value, the trustee claims to be entitled to fifteen thousand dollars. I can not think the claim can be allowed, and concur with the Chief Justice.

MR. JUSTICE WOODS, *dissenting*. I dissent. The right of the insured to change the beneficiary of the policies, being a power which he could exercise for his own benefit, was property both under the general principles of law and under the express terms of the bankrupt act, and it passed to the trustee in bankruptcy, under the statute expressly providing that all property not exempt, including such a power, should pass to the trustee. *Earle* v. *Maxwell*, 86 S. C. 1; *In re Hettling*, 175 Fed. 65; *In re Dolan*, 182 Fed. 949; *Clark* v. *Equitable Life Ins. Society*, 143 Fed. 175; *In re Whepley*, 169 Fed. 1019; *In re Wright*, 157 Fed 544; *In re Slingluff*, 106 Fed. 154; *In re White*, 174 Fed. 333, 26 L. R. A. (N. S.) 451; *In re Orear*, 178 Fed. 632, 30 L. R. A. (N. S.) 990; *In re Andrews*, 191 Fed. 325, 41 L. R. A. (N. S.) 123.

It is argued that it did not pass in this instance, however, for the reason that the policy was payable to the wife of the insured and so stood at the date of the petition and adjudication in bankruptcy, and such a policy is expressly exempted from the claims of creditors of the insured by section 2721 of Civil Code of the State. This argument would be sound if the Constitution of this State did not expressly forbid that the constitutional exemption to the husband and wife jointly should not exceed $1,000.00 real estate and $500.00 personal property, which exemption was claimed and allowed. But for this provision of the Constitution, it would have been within the legislative power to extend the constitutional exemption to include life

insurance policies.    *Holden* v. *Stratton,* 198 U. S. 202, 49 L. Ed. 1018.

The bankrupt statute did not permit Sanders to retain the policies by tendering to the trustee the cash surrender value, because it is admitted in the agreed statement of facts that they had no cash surrender value, and that the insurance company would not have paid any money for them at the date of the adjudication in bankruptcy or at any time prior to the death of Sanders.    This admission excludes the case from the provision of the bankrupt act allowing the bankrupt to retain an insurance policy on payment of the cash surrender value, and takes it out of the rule laid down in *Hiscock* v. *Martens,* 205 U. S. 202, 51 L. Ed. 771, that policies having a cash surrender value within the meaning of the act embrace those which either by their terms or by the practice or concession of the company issuing them have such value.